872 P.2d 366 (1994)
117 N.M. 393
Roberta J. CHAVEZ and Manuel Blea, individually and on behalf of all members of that class of persons who are beneficiaries of life insurance policies issued by the American Life and Casualty Insurance Company of Fargo, North Dakota, Plaintiffs-Appellants,
v.
AMERICAN LIFE AND CASUALTY INSURANCE COMPANY OF FARGO, NORTH DAKOTA, and The New Mexico National Guard Association, Inc., Defendants-Appellees.
No. 21040.
Supreme Court of New Mexico.
March 29, 1994.
*367 Duhigg, Cronin & Spring, P.A., John J. Duhigg, Helena Gorochow, Albuquerque, for plaintiffs-appellants.
Carpenter, Comeau, Maldegen, Brennan, Nixon & Templeman, Michael W. Brennan, Patricia J. Turner, Santa Fe, for defendant-appellee NM Nat. Guard Ass'n.
Gallagher, Casados & Mann, P.C., Doris W. Eng, Albuquerque, for defendant-appellee American Life & Cas. Co. of Fargo, ND.

OPINION
RANSOM, Justice.
Roberta Chavez and Manuel Blea, the beneficiaries of a life insurance certificate, appeal from a summary judgment denying their claims against the insurer and the policyholder of a group policy, American Life and Casualty Insurance Company of Fargo, North Dakota and the New Mexico National Guard Association, Inc., respectively. Chavez and Blea claimed benefits following the death of guardsman Mark Blea, who held a certificate reflecting insurance of $25,000 under the group policy. The trial court held that Mark Blea had not been entitled to notice before his life insurance certificate was cancelled for nonpayment. We affirm.
Facts. In December 1988, New Mexico National Guard member Mark Blea obtained life insurance in the face amount of $25,000 through a group policy issued to the Association by American Life, naming his father, Manuel, and his friend, Chavez, as beneficiaries. Blea authorized a monthly deduction from his drill pay to be forwarded to the *368 Association and transmitted to American Life to cover the premium for his life insurance. Blea's insurance certificate specifically provided that the insurance would terminate at the end of the last month for which a premium was paid.
Deductions were made and premiums were paid from October 1988 to April 1989. In May and June 1989, Blea did not attend drill and consequently did not receive pay from which deductions could be made. From July 5 to October 3, Blea went on active status with the Army. During this time he did not receive any drill pay from which deductions could be made because he was not participating in National Guard drill. From October 1988 to November 1989, the Army issued to Blea a monthly Leave and Earnings Statement ("LES") that detailed all deductions from his pay and identified the reason for the deduction. Blea's statements from May to August reflect that no deduction was made to pay the life insurance premiums.
In August, American Life cancelled Blea's certificate for nonpayment. The consequent termination of the deduction was noted on Blea's August LES. The LES was sent, however, to Blea's National Guard unit rather than to Blea, who was on active duty status at the time. Blea died on November 5, and the beneficiaries made demands for payment under the certificate. American Life refused payment because the certificate had been cancelled.
Proceedings. On May 27, 1990, the beneficiaries filed a class action on behalf of all beneficiaries of life insurance policies issued by American Life. A second amended complaint named the Association as a defendant. On July 27, the Association filed a motion for summary judgment, and on October 20 American Life filed a similar motion. The trial court concluded that both the Association and American Life were entitled to summary judgment and the action was dismissed with prejudice.
The statutory requirement of ten-day notice of cancellation does not apply to life insurance. The beneficiaries argue on appeal that neither American Life as the insurer nor the Association as its agent gave Blea notice of cancellation of his certificate for nonpayment as required by NMSA 1978, Section 59A-18-29(A) (Repl.Pamp.1992). American Life and the Association contend that the statute does not apply to life insurance. In plain and unambiguous terms, Section 59A-18-29(F) states: "This section shall not apply as to life insurance or annuity contracts, health insurance contracts, title insurance, inland marine insurance contracts, or to any insurance policy which by its terms is not cancellable during the term of the policy at the option of the insurer." (Emphasis added.)
The beneficiaries argue that this section is not pertinent to this case because Blea's life insurance contract was not one that "by its terms is not cancellable during the term of the policy." The beneficiaries, however, misconstrue the statute. In Hale v. Basin Motor Co., 110 N.M. 314, 318, 795 P.2d 1006, 1010 (1990), this Court reaffirmed the rule of construction that follows from the "last antecedent" doctrine in interpreting the meaning of the word "or". We stated that "the word `or' should be given its normal disjunctive meaning unless the context of the statute demands otherwise," and we recognized that "relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." Id. (quoting Caseldine v. Johnson (In re Goldsworthy's Estate), 45 N.M. 406, 412, 115 P.2d 627, 631 (1941)). Construing the certificate in this manner, we hold that it is only the phrase "to any other insurance policy" that is limited by the concluding language in Section 59A-18-29(F).
Our holding is supported by Department of Insurance regulations. The Department has adopted a rule that is identical in content to Section 59A-18-29(A). See New Mexico Dep't of Ins., Cancellation Rule 79-3-4 (Feb. 1, 1980). Like Section 59A-18-29(A), Rule 79-3-4 requires at least a ten-day notice of cancellation of a policy for nonpayment. The regulations define "policy" to mean "any policy issued by an insurer protecting the insured against the perils or incidents described as Class 2, Class 3 or Class 5 insurance, as those classes are defined in [NMSA 1978] Section 59-27-30." New Mexico Dep't *369 of Ins., Cancellation Rule 79-3-2(G). Section 59-27-30 defined life insurance as a Class 1 insurance. Thus, under the regulations, a holder of a life insurance policy is not entitled to notice of cancellation for nonpayment.[1] Because "the interpretation of a statute by a department of public officials charged with the duty of administering a statute will be of persuasive force with the courts," Ortega v. Otero, 48 N.M. 588, 594, 154 P.2d 252, 255 (1944), we find the Department regulations leave no genuine issue regarding whether holders of life insurance are entitled to a ten-day notice of cancellation for nonpayment.
The beneficiaries also argue that if this Court does not apply the last restrictive clause to life insurance, the intent and purpose of the statute is defeated because the cancellation provision would apply only to liability insurance. We believe, however, that by writing the statute as it did the legislature intended to limit the cancellation provision to exclude life insurance. The legislature is presumed to know the law, including the laws of statutory construction, when it passes legislation. See V.P. Clarence Co. v. Colgate, 115 N.M. 471, 474, 853 P.2d 722, 725 (1993) (interpreting statute in light of presumption that the legislature knows of existing law when it passes statute). Thus, the legislature is presumed to know that this Court will apply a restrictive clause following an "or" only to the immediately preceding term unless it is clear from the statute that the restriction is meant to apply to the entire list. The legislature did not provide any reason to apply the restrictive clause in Section 59-18-29(F) to the term "life insurance" and thus we will not make such an application.
The Association has a common-law duty of good faith and due care in attending to a group policy. The beneficiaries also argue that American Life and the Association had a common-law duty to provide Blea with notice of cancellation of his certificate, citing for support Tabb v. Louisiana Health Services & Indemnity Co., 361 So.2d 862 (La.1978), and Van Ostrand v. National Life Assurance Co., 82 Misc.2d 829, 371 N.Y.S.2d 51 (App. Div.1975). In Tabb, the court recognized that a majority of states require that notice of cancellation or change in policy be given to the employee certificate holder in a group contributory insurance policy. 361 So.2d at 864 n. 1. As authority for this recognition, however, the court cited an annotation that expressly excluded circumstances in which the individual policy was cancelled for nonpayment. Id. (citing C.T. Drechsler, Annotation, Cancellation or Modification of Master Policy as Termination of Coverage Under Group Policy, 68 A.L.R.2d 249, 252 (1959)). Thus, Tabb is not applicable to this case.
In Van Ostrand, a bank employee sought life insurance coverage for her spouse under a group life insurance policy that permitted employees to purchase insurance on the life of dependents. 371 N.Y.S.2d at 53. The bank provided the employee with a booklet that outlined her coverage and she received a certificate that explained conversion privileges if her husband entered an ineligible class of dependent. Id. at 53-54. The employee and her spouse were divorced at some later time, but the employee continued to pay premiums for his life insurance even though he no longer fit within the class of dependents as defined in the master policy. Id. at 54. Four months after the divorce, the employee's ex-husband died and the employee made a claim for the proceeds of the policy. The insurer denied her claim on the basis that the former husband was not eligible for coverage after the divorce. Id. The court held that the employer had a "duty of good faith and due care in attending to a group policy secured for the employee's benefit." Id. at 57. The court denied the employee's *370 claim for negligence against the employer, however, holding that her allegation of duty fell outside the administration of the group policy. Id.
We agree with the reasoning and holding of the court in Van Ostrand and hereby recognize that an employer owes a duty of good faith and due care to its employees in attending a group insurance policy secured for the benefit of the employees. This duty "requires that the employer perform whatever functions are reasonable and necessary in order to keep the policy in effect," and that "the employer avoid terminating the insurance policy or allowing it to lapse contrary to the desires and intentions of the employees." Id.
The Association did not breach its duty by failing to provide Blea with notice of cancellation. The beneficiaries argue that the Association breached its common-law duty by failing to give Blea notice of cancellation. We, however, agree with the Van Ostrand court that the duty of good faith and due care "is not synonymous with the duty to attend to the employee." 371 N.Y.S.2d at 57. In Van Ostrand, the court held that the employer does not have a duty to enhance "the employee's understanding and appreciation of the insurance contract." Id. Further, we recognize the general rule that notice of cancellation is not required when the basis for the cancellation is nonpayment. See generally Dale R. Agthe, Annotation, Termination of Employee's Individual Coverage Under Group Policy for Nonpayment of Premiums, 22 A.L.R. 4th 321, 335-43 (1983).
In this case, Blea's insurance certificate expressly stated that the insurance would terminate "at the end of the last month for which you pay a premium." This language is clear and the Association had no duty to explain the terms in further detail. The beneficiaries contend that the Association continually made representations to Blea that as long as he reported for his monthly drill his insurance premiums would be deducted from his drill pay. If the Association did make such representations, Blea knew or should have known that if he did not report for drill, as was the case in May and June 1989, his premiums would not be paid and the insurance would be terminated. Based on these facts, we hold that the Association did not breach its duty of good faith and due care.
The claims for estoppel and for unfair insurance or trade practices must fail. The beneficiaries base their claims for estoppel and for unfair insurance or trade practices on alleged representations made by the Association. The only representation that the beneficiaries rely on is the statement allegedly made by the Association that as long as Blea met his obligation to report for training with the National Guard his premiums would be deducted from his pay. The Association disputes that this representation was ever made, but we believe that even if the statement was made, American Life and the Association are still entitled to summary judgment.
It is apparent from the record that neither American Life nor the Association made an active representation that Blea's certificate would not terminate in the event that he was not entitled to drill pay from which the premium would be paid. The statement allegedly made by the Association is consistent with the terms of the certificate and with Blea's method of payment. So long as Blea participated in monthly drill with the National Guard, a deduction would be made from his drill pay from which the life insurance premium would be paid; if Blea did not participate in drill, he would not be paid and, accordingly, deductions could not be made to pay the premium. At a minimum, Blea should have received his LES forms for May and June and would have known that the premium was not being paid. Then, because of the clear language in his certificate, Blea would have known that his life insurance would be terminated for nonpayment. The beneficiaries do not allege that American Life and the Association made any representations that would have led Blea to believe that he would continue to receive coverage when he did not attend drill. Thus, there is nothing upon which Blea could have reasonably relied to his detriment and the claims for estoppel and for unfair insurance or trade practices must fail.
The claims for prima facie tort and intentional infliction of emotional distress must fail. The beneficiaries base their claims for prima facie tort and intentional infliction of *371 emotional distress on the failure by American Life and the Association to pay the claims for insurance benefits that they were obligated to pay. According to the record, however, Blea's certificate for life insurance was cancelled for nonpayment. Other than the theories asserted above, the beneficiaries have not advanced a reason why they would be entitled to make a claim for benefits on a certificate that has been cancelled. Thus, American Life and the Association were not obligated to pay the benefits and the claims for prima facie tort and intentional infliction of emotional distress must fail.
Conclusion. Because there is no statutory or common-law duty requiring the Association to provide Blea with notice of cancellation beyond what was provided, and because we do not find that the Association committed any tort for which it would be liable, we need not reach the question whether the Association was an agent for American Life. Further, we hold that American Life did not breach any statutory or common-law duty nor did it commit any tort. Thus, the decision of the trial court is affirmed.
IT IS SO ORDERED.
BACA and FRANCHINI, JJ., concur.
NOTES
[1] When the legislature rewrote the Insurance Code in 1984 it repealed Section 59-27-30. See 1984 N.M.Laws ch. 127, § 997. The current Insurance Code does not specify classes of insurance as it did in Section 59-27-30 and defines "policy" in more general terms. See § 59A-18-2. The Department revised its rules in 1990 but did not materially alter the definition of "policy" or the cancellation provision. Thus, the Department continues to rely on the original delineation of classes of insurance and continues to exclude life insurance from the list of insurance to which the ten-day notice provision of the regulations applies. We believe the continued use of the delineation by the Department is consistent with the amended Code.