2005-NMCA-020

107 P.3d 4

**TEAM SPECIALTY PRODUCTS, INC.,** New Mexico ID No. 02–124490–00–1 Protest to Department's Denial of Application for Technology Jobs Tax Credit for Tax Year 2001, Appellant,

v.

**NEW MEXICO TAXATION AND REVENUE DEPARTMENT,** Appellee.

**No. 24,670.**

Court of Appeals of New Mexico.

Dec. 17, 2004.

James Lawrence Sanchez, Rael & Sanchez, Los Lunas, NM, for Appellant.

Patricia A. Madrid, Attorney General, Susanne Roubidoux, Special Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} The Taxation and Revenue Department of the State of New Mexico (the Department) denied an application by Team Specialty Products, Inc. (Taxpayer) for a tax credit under the Technology Jobs Tax Credit Act (the Technology Act), NMSA 1978, §§ 7–9F–1 to –12 (2000). The Department based the denial on Taxpayer's failure to apply for the tax credit within a statutorily prescribed time period. A Department hearing officer denied Taxpayer's protest of the Department's denial of Taxpayer's application. In this appeal, we are required to determine whether the one-year prescribed period contained in Section 7–9F–9(A) to apply for a tax credit is permissive or mandatory. We hold that the one-year period is mandatory and that the Department properly invoked Section 7–9F–9(A) to bar Taxpayer's application. We therefore affirm the decision and order of the hearing officer denying Taxpayer's protest.

## BACKGROUND

{2} The Technology Act grants eligibility to a taxpayer conducting qualified research at a qualified facility and making qualified expenditures, all as defined in the Technology Act, to claim a "basic credit" equal to four percent of qualified expenditures, and to claim an "additional credit" equal to another four percent under certain circumstances.

§§ 7–9F–5, –6. These claims may be pursued after a taxpayer has applied for and been granted approval for the credits. § 7–9F–9(B), (C). Section 7–9F–9(A) states: "A taxpayer may apply for approval of a credit within one year following the end of the calendar year in which the qualified expenditure was made."

{3} In November 2001, Robert and Daniel Sachs (Owners) purchased Taxpayer. Owners retained two employees, Barbara Blanton and her assistant, Jeff Hurley, whose duties were to pay bills, file tax returns, and perform general accounting tasks. Between November 2001 and February 2003, Owners were not aware of the existence of a technology jobs tax credit. During this gap in time and knowledge, the following occurred: For the first six months after the purchase, Blanton maintained that she was unable to provide Owners with financial information because the computer system was being updated, and Owners did not receive their first financial information until May 2002. Blanton resigned in June 2002 with no notice. Although Taxpayer's cash flow was improving, Owners began to receive notices that Taxpayer's vendors were not being paid; and, at the same time, Hurley, who had taken over Blanton's duties, informed Owners that he had lost Taxpayer's credit card and that someone had run up unauthorized charges. Upon investigation, Owners determined that it was Hurley who made the unauthorized charges, whereupon Owners fired Hurley. In reviewing Taxpayer's bookkeeping and accounting records, Owners discovered that bills and taxes had not been paid and that Hurley had forged a company check written to himself in the amount of $67,000.

{4} Upon hiring a certified public accountant to help straighten out Taxpayer's accounting problems, the accountant discovered two letters concerning a tax credit available to Taxpayer under the Technology Act. The first letter was dated December 26, 2001, from Taxpayer's former accounting firm to Blanton reminding her that Taxpayer's application for a tax credit for the months in 2000 during which the credit was available had to be mailed no later than December 31, 2001.

The second letter, dated July 29, 2002, was from the Department to Blanton notifying her that Taxpayer's application for the tax credit for 2000 had been approved.

{5} After learning of these letters, Owners determined that neither Blanton nor Hurley had filed an application for the tax credit for the period January through December 2001, which is the time period at issue in this case. In September 2003, Taxpayer's accountant prepared and submitted an application for the basic and additional tax credits for the 2001 calendar year. The Department denied the application on September 19, 2003, on the ground that the application was not filed within one year following the end of the calendar year in which the qualified expenditures were made.

{6} Taxpayer protested this denial. Taxpayer's position before the hearing officer assigned to the protest was that the use of the word "may" in Section 7–9F–9(A) made the time limit in the statute optional rather than mandatory. Also, Taxpayer argued that under the statute the Department had discretion to extend the time within which an application for the tax credit may be filed when the taxpayer had good cause for delay. The hearing officer denied the protest, concluding that "[t]he one-year limitation period set out in [Section] 7–9F–9(A) is mandatory and not discretionary," and further that Taxpayer's untimely application barred the Department from approving the credit.

{7} On appeal, Taxpayer contends that the hearing officer's decision is contrary to law, arbitrary, and capricious because Section 7–9F–9(A) is discretionary and permissive, and that the Department was not barred from accepting the application. Taxpayer also asserts it was denied substantive due process.

## DISCUSSION

### Standard of Review

{8} We will set aside a decision and order of a hearing officer only if we find them to be "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7–1–25(C) (1989); *Grogan v. N.M. Taxation & Revenue Dep't*, 2003–

NMCA–033, ¶ 10, 133 N.M. 354, 62 P.3d 1236. In the present case, there exist no disputed facts. The hearing officer interpreted Section 7–9F–9(A), and applied that statute to the facts of the case. Our review of an application of the law to facts is de novo. *Id.; Quantum Corp. v. Taxation & Revenue Dep't*, 1998–NMCA–050, ¶ 8, 125 N.M. 49, 956 P.2d 848.

### Interpretation of Section 7–9F–9(A) and Right to Extension of Deadline

 {9} "[A]ll provisions of a [statutory scheme], together with other statutes in pari materia, must be read together to ascertain legislative intent." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). "The rule that statutes in pari materia should be construed together has the greatest probative force in the case of statutes relating to the same subject matter passed at the same session of the Legislature." *State v. Davis*, 2003–NMSC–022, ¶ 12, 134 N.M. 172, 74 P.3d 1064. We are guided by the principle that "[t]ax credits are strictly matters of legislative grace and are to be construed against the taxpayer." *Murphy v. Taxation & Revenue Dep't*, 94 N.M. 90, 93, 607 P.2d 628, 631 (Ct.App.1979).

{10} Taxpayer argues the classic distinction between "shall" and "may" in statutory construction. *See Thriftway Mktg. Corp. v. State*, 114 N.M. 578, 579, 844 P.2d 828, 829 (Ct.App.1992) ("[A] fundamental rule of statutory construction states that in interpreting statutes, the words 'shall' and 'may' should not be used interchangeably but should be given their ordinary meaning"); *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 486, 650 P.2d 3, 8 (Ct.App.1982) ("[A]n amendment substituting 'may' for 'shall' manifests a clear intent to make the act referred to permissive instead of mandatory."); *see also Chavez v. Am. Life & Cas. Ins. Co.*, 117 N.M. 393, 396, 872 P.2d 366, 369 (1994) ("The legislature is presumed to know the law, including the laws of statutory construction, when it passes legislation."). Taxpayer then argues that if the Legislature intended Section 7–9F–9(A) to be a mandatory statute rather than a permissive one, it could have worded Section 7–9F–9(A) as it did NMSA 1978, § 7–9A–8(A) (1979, as amended through 2000) in the Investment Credit Act, which reads: "A taxpayer shall apply for approval for a credit within one year following the end of the calendar year in which the qualified equipment for the manufacturing operation is purchased or introduced into New Mexico."

 {11} Sections 7–9A–8(A) and 7–9F–9(A) are both contained in Chapter 7 of New Mexico's taxation statutes and they both involve tax credits. But Section 7–9A–8, which is in the Investment Credit Act, was enacted in 1979, some twenty years before Section 7–9F–9(A), which is in the Technology Act. We do not glean from these two statutes, or from a review of the taxation statutes in Chapter 7, that the use of "may" in Section 7–9F–9(A) requires the conclusion that the Department must, or under the circumstances of this case has the discretion to, permit filing beyond the one year mentioned in the statute. To the contrary, although it might be considered unusual for the Legislature to use the word "may" rather than "shall" if the Legislature intended the statute to constitute a statute of limitations, we are not persuaded that the Legislature did not intend a one-year limitation period in enacting Section 7–9F–9(A). It would be more unusual for the Legislature in tax legislation to intend by the words "may apply" together with a specific one-year time limitation to offer taxpayers an open-ended time frame within which to apply for approval of a tax credit. Taxpayer does not bring to our attention any tax credit or similar law provision that reads, or has been construed, in a manner that permits the open-ended, unrestricted, or unconditional application time frame that Taxpayer seeks.

{12} The Technology Act itself contains certain time frames. The Department is required in October of each year to report to legislative committees on the fiscal and economic impacts of the Technology Act, using the most recently available data for the two prior fiscal years. § 7–9F–12. The information for impact assessment includes the amounts of basic credits and additional credits received by taxpayers. *Id.* Basic credits are approved based on information as to "qualified expenditures," and additional credits are approved based on information as to

"annual payroll expense," "base payroll expense," and "qualified expenditures," as those terms are defined in the Technology Act. §§ 7–9F–3(B), (C), (F), 7–9F–6. The eligibility provisions for claiming basic and additional credits are the following:

A. A taxpayer conducting qualified research at a qualified facility and making qualified expenditures is eligible to claim the basic credit pursuant to the Technology Jobs Tax Credit Act. [7–9F–1 to 7–9F–12 NMSA 1978].

B. A taxpayer conducting qualified research at a qualified facility and making qualified expenditures is eligible to claim the additional credit pursuant to the Technology Jobs Tax Credit Act if:

(1) the taxpayer increases the taxpayer's annual payroll expense at the qualified facility by at least seventy-five thousand dollars ($75,000) over the base payroll expense of the taxpayer;

(2) the increase in Paragraph (1) of this subsection has not previously been used to meet the requirements of this subsection; and

(3) there is at least a seventy-five thousand dollar ($75,000) increase in the taxpayer's annual payroll expense for every one million dollars ($1,000,000) in qualified expenditures claimed by the taxpayer in a taxable year in the same claim.

§ 7–9F–6. All of the foregoing provisions in Sections 7–9F–3, –6, and –12 indicate a legislative concentration on annual reporting and annual payroll expense. They indicate no intention to provide a taxpayer an open-ended time to apply for a tax credit.

{13} Taxpayer's statutory construction cases, *Thriftway Marketing* and *Vaughn*, involve significantly different statutes and circumstances and do not require the conclusion that "may" in Section 7–9F–9(A) should be interpreted to mean that there exists no one-year limitation or that the Department has discretion under the circumstances here to accept the otherwise untimely application. Reading the foregoing provisions of the Technology Act together with Section 7–9F–9(A)'s statement that "[a] taxpayer may apply for approval of a credit within one year following the end of the calendar year in which the qualified expenditure was made," the apparent intent of the Legislature was to give a taxpayer the opportunity to obtain credits but to bind a taxpayer seeking approval of credits to credits against expenditures made in the taxable year next preceding the year of application for approval of the credits. If a taxpayer chooses to apply for either a basic and/or an additional credit, the taxpayer is required to apply for approval of the credit within one year following the end of that taxable year. The Technology Act does not allow a taxpayer to apply for a tax credit during any other period.

{14} Taxpayer also argues that Section 7–9F–9(A) should have been interpreted as providing the Department with discretion to accept its application after the one-year period because that interpretation would be consistent with the stated purpose of the Technology Act. Taxpayer recites the Technology Act's purpose "to provide a favorable tax climate for technology-based businesses engaging in research, development and experimentation and to promote increased employment and higher wages in those fields in New Mexico." § 7–9F–2. Taxpayer argues that reading the statute as discretionary is in keeping with that purpose. Taxpayer also points to another statute, NMSA 1978, § 7–1–13(E) (1994), which grants the Department's cabinet secretary authority to grant a taxpayer or a class of taxpayers up to twelve additional months to file a return or to pay taxes due to the state with discretion to extend the deadline for filing a return for "good cause." Taxpayer further argues that in enacting Section 7–9F–9(A) the Legislature must not have intended a statute of limitations because the Technology Act requires reporting with "data for the two prior fiscal years" rather than only one prior fiscal year. *See* § 7–9F–12. In support of these arguments, Taxpayer cites *Vaughn*, 98 N.M. at 486–87, 650 P.2d at 8–9, for the proposition that an act remedial in nature should be construed in light of the beneficent purposes of the enactment.

{15} Assuming Section 7–9F–9(A) sets a one-year limitations period, the Technology Act contains no provision granting the Department the authority to grant an extension

of the one-year period. Nor in the Technology Act is there any time limit set for how long an extension may be granted. The Department argues, and in support of its argument cites case law to the effect, that it had no power or authority to extend the application deadline because it has not been given express or implied power or authority to do so by the Legislature. *See In re Application of PNM Elec. Servs.,* 1998–NMSC–017, ¶ 10, 125 N.M. 302, 961 P.2d 147 (stating that because administrative agencies are creatures of statute, their power and authority are limited to that which is expressly granted and necessarily implied by statute); *Maxwell Land Grant Co. v. Jones,* 28 N.M. 427, 429–30, 213 P. 1034, 1035 (1923) ("The state tax commission is a creature of statute, and it has only such powers as are conferred upon or granted to it by the statute under which it assumed to act[.]"); *Chalamidas v. Envtl. Improvement Div.,* 102 N.M. 63, 66, 691 P.2d 64, 67 (Ct.App.1984) ("Administrative bodies are creatures of statute and can act only on those matters which are within the scope of authority delegated to them."); *see also* § 7–1–13(E) (specifically granting the Department's cabinet secretary discretion to grant a taxpayer or class of taxpayers up to twelve additional months to file a return or pay taxes).

{16} Whether the Department, under no circumstance, has authority to extend the application period, and whether a circumstance could arise in which a taxpayer should be permitted to file an application for a credit after the one-year period has elapsed, are not issues we choose to address in this appeal. We are confident that the circumstances in this case do not require the conclusion that the Department's decision to refuse the application as untimely under Section 7–9F–9(A) was arbitrary, capricious, an abuse of discretion, or contrary to law. Even were the Department to have authority under some circumstances to accept a late filing, none of the reasons advanced by Taxpayer convinces us that the Department's and hearing officer's refusals to accept the late filing were arbitrary, capricious, or an abuse of discretion.

{17} Taxpayer filed its application for tax credits for the 2001 calendar year in September 2003, which was nine months following the one-year deadline date of December 31, 2002. Taxpayer does not refer us to evidence in the record showing that Owners performed any due diligence in regard to Taxpayer's eligibility and application for tax credits following their purchase of Taxpayer in November 2001, at the time of Blanton's resignation in June 2002, or even at the time they learned of Hurley's unauthorized purchases. Similarly, Taxpayer does not refer us to evidence in the record indicating that Taxpayer had no opportunity to discover the application failure in time to timely apply for a tax credit, or at the very least, to seek within the deadline an extension of the deadline. Further, we are presented with no record support explaining why Taxpayer did not submit an application until September 2003. We will not search the record to attempt to find factual support for a party's claims. *See In re Estate of Heeter,* 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992). Moreover, we are supplied with no case authority supporting Taxpayer's argument that it should not be held responsible under the circumstances for the conduct of its employees. *Cf. El Centro Villa Nursing Ctr. v. Taxation & Revenue Dep't,* 108 N.M. 795, 799, 779 P.2d 982, 986 (Ct.App.1989) ("[E]very person is charged with the reasonable duty to ascertain the possible tax consequences of his action [or inaction]. We are not inclined to hold that the taxpayer can abdicate this responsibility merely by appointing an accountant as its agent in tax matters." (internal quotation marks and citation omitted) (alteration in original)).

**Taxpayer's Substantive Due Process Contention**

{18} Taxpayer argues that it has been denied substantive due process because the hearing officer found that the failure of Taxpayer to file the application on time was because of the negligence of the former employees and not because of their malfeasance and criminal conduct. Taxpayer sees the hearing officer's decision as an unreasonable exercise in government power, permitting the state "to benefit from the criminal con-

duct of another to the detriment of the victim of the criminal activity."

{19} Taxpayer's sole case authority for its substantive due process argument is that *Mills v. New Mexico Board of Psychologist Examiners,* 1997–NMSC–028, ¶ 14, 123 N.M. 421, 941 P.2d 502, stands for the proposition that substantive due process prohibits an unreasonable exercise of government power. **[BIC 8]** The unreasonable exercise of governmental power argued by Taxpayer appears to be the Department's failure to accept the untimely application because by not accepting the application the State is "permitted to benefit from the criminal conduct of another to the detriment of the victim of the criminal activity." While *Mills* is a substantive due process case, the facts and issues in that case are in no way analogous to the present case. Further, Taxpayer has failed to offer any analysis or authority bearing on how the Department's interpretation of Section 7–9F–9(A) could constitute a denial of substantive due process. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellate court can assume that no authority supports a proposition when a party cites no authority to support it). Taxpayer has not even shown that the hearing officer's interpretation of Section 7–9F–9(A) is patently arbitrary, capricious, or an abuse of discretion. *Cf. C & D Trailer Sales v. Taxation & Revenue Dep't,* 93 N.M. 697, 699, 604 P.2d 835, 837 (Ct.App.1979) (stating as to the taxpayer's assertion of an unlawful classification that the "[t]axpayer must show that the taxing statute is patently arbitrary and capricious or void for uncertainty in order to defeat the statute on constitutional grounds").

■ {20} Taxpayer faults the hearing officer for determining that Taxpayer's failure to apply on time was due to negligence and not to malfeasance and criminal conduct, and by failing to recognize the unique circumstances in this case. The hearing officer determined that while Hurley's acts of embezzlement and forgery were crimes, his failure to file the tax credit application was merely negligent, and Taxpayer, not the Department, had to bear the responsibility for that negligence. Even were there evidence and even were it legally significant that an employee's conduct was criminal in nature and was intended to harm Taxpayer by not timely filing the application, Taxpayer is in no position to attack the hearing officer's finding. Taxpayer does not sustain its burdens under Rule 12–213(A)(3) and (4) NMRA to specifically attack the hearing officer's factual determination, to set out all of the evidence on this issue, or to show that the hearing officer's determination was unsupported by substantial evidence. Nor did Taxpayer satisfy its burden to prove that its employee's failure to file the application or to discuss the status of the application with Taxpayer was criminal in nature and that the employee engaged in the criminal conduct for the purpose of harming Taxpayer. *See Grogan,* 2003–NMCA–033, ¶ 11, 133 N.M. 354, 62 P.3d 1236 (stating that it was the taxpayer's burden to prove her assertion that receipts were not taxable). The hearing officer's determinations of negligence and Taxpayer's inaction stand based on Taxpayer's improper and unsuccessful attack.

■ {21} Finally, the determinations of the hearing officer of employee negligence, of responsibility on the part of Taxpayer, and of failure of Taxpayer to act on a timely basis do not constitute grounds for a substantive due process claim, even were the Department's interpretation of and action under Section 7–9F–9(A) to somehow come within the concept of substantive due process. *See generally State v. Druktenis,* 2004–NMCA–032, ¶¶ 50–52, 135 N.M. 223, 86 P.3d 1050 (discussing the meaning of substantive due process). Based on Taxpayer's failures to provide persuasive argument, to provide authority, and to sustain its burdens under appellate procedure and on the merits of the issue, we hold that Taxpayer was not denied substantive due process.

## CONCLUSION

{22} We affirm the decision and order of the hearing officer denying Taxpayer's protest.

{23} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.