2006 UT 18

James and Carol MacFARLANE, Bernard and Verbena Diamond, Samuel and Sandra A. Hunter, Jane A. Marquardt, Robert L. and Annette Marquardt, Robert S. and Kim Marquardt, Barbara B. Baker, and William and Julia L. Reagan, Plaintiffs and Appellees,

v.

UTAH STATE TAX COMMISSION, Defendant and Appellant.

Nos. 20040956, 20030949, 20030887.

Supreme Court of Utah.

March 24, 2006.

As Amended April 8, 2006.

Mark K. Buchi, Steven P. Young, Charles R. Brown, Jennifer A. James, Roger O. Tew, Salt Lake City, for appellees.

Mark L. Shurtleff, Att'y Gen., Mark E. Wainwright, Asst. Att'y Gen., for appellant.

Carol B. Lear, Jean Welch Hill, for amicus Utah State Board of Education.

DURHAM, Chief Justice:

### INTRODUCTION

¶ 1 This is a consolidated appeal of judgments of the Fourth Judicial District Court and the Utah State Tax Commission. The common issue is whether Utah Code section 59–10–106 allows the taxpayers to claim a

credit against their income taxes for certain corporate franchise taxes paid to California and Texas by the small businesses of which they were shareholders. The Tax Commission argues that the franchise taxes are not included in the category of taxes for which a credit is statutorily allowed. We disagree.

## BACKGROUND

¶ 2 Four sets of taxpayers are involved in this case. The first party consists of Bernard and Verbena Diamond, Samuel and Sandra A. Hunter, Jane A. Marquardt, Robert L. and Annette Marquardt, and Robert S. and Kim Marquardt (collectively, the "MTC Shareholders"), each of whom was a shareholder, or the spouse of a shareholder, in Management and Training Corporation. The second party consists of James and Carol MacFarlane, who were the sole shareholders of I.C. Security Printers, Inc. The third party, Barbara Baker, was the sole shareholder of Challenger Schools. Finally, William Reagan, who with his wife forms the last party, was the sole shareholder of Reagan National Advertising of Austin, Inc. All of these individuals (collectively, the "Taxpayers") were Utah residents and each filed, either individually or jointly with a spouse, Utah individual income tax returns. Additionally, all of the corporations in which the Taxpayers were shareholders were S corporations organized in Utah.

¶ 3 An S corporation is a small business that meets certain criteria set forth in subchapter S of chapter 1 of subtitle A of the Internal Revenue Code and thereby qualifies for special federal tax treatment. 26 U.S.C. § 1361 (2000). A business becomes an S corporation by shareholder election. *Id.* § 1362 (2000). Once the election has been made by a qualifying corporation, it is treated as a pass-through tax entity, meaning that all revenues, profits, expenses, and losses are passed through, pro rata, to the shareholders based upon their percentage of ownership. *Id.* § 1366 (2000).

¶ 4 Because of this pass-through characteristic, shareholders of such corporations are individually responsible for taxes imposed upon the corporate entity. In this case, either Texas or California, or both, levied corporate franchise taxes on the four S corporations at issue.[1] The reason these states did not impose the tax directly on the shareholders rather than the companies is that states are not obliged to recognize S corporation status. While both Utah and California recognize S corporations for state tax purposes, Texas does not. *Compare* Utah Code Ann. § 59-7-701 (2004) *and* Cal. Rev. & Tax.Code § 23800 (West 2004) *with* Tex. Tax Code Ann. § 171.001 (Vernon 2002 & Supp.2005). Also, at all relevant times, California allowed foreign S corporations doing business in the state to elect to be treated as regular C corporations for California tax purposes. Cal. Rev. & Tax Code § 23801(A)(4)(a)(ii) (West 2004). Because the four corporations were treated as C corporations by both Texas and California, the taxes were imposed by these states on the corporation, but the shareholders were ultimately responsible for their payment.

¶ 5 The Taxpayers sought to offset the effects of these taxes by claiming a credit against their Utah individual income taxes for a portion of the corporate franchise tax which had been paid by the S corporation to either Texas or California, or both. The Taxpayers claimed this credit pursuant to Utah Code section 59-10-106. The credits were disallowed. The Taxpayers each filed Petitions for Redetermination with the Tax Commission to review the credit denials.

¶ 6 The Tax Commission conducted four formal hearings to determine the validity of the credits claimed by the Taxpayers, one each for the MTC Shareholders, the MacFarlanes, Ms. Baker, and the Reagans. In each case, the Tax Commission denied the credits, reasoning that because the Texas and California taxes were franchise taxes they were not eligible to be credited against the Taxpayers' individual income taxes under Utah Code section 59-10-106. The Tax Commission noted that although the Texas and Cali-

---

1. Management Training Corporation was doing business in both Texas and California, as well as other states; I.C. Printers was doing business in California and other states, as was Challenger Schools; Reagan National Advertising of Austin, Inc., was doing business in Texas.

fornia taxes were measured by income,[2] they were imposed on the privilege of doing business within each state.[3] Thus, the Tax Commission concluded that such taxes were not "on income" as required by Utah Code section 59–10–106 in order for a credit to be claimed.[4]

¶ 7 Taxpayers appealed the decisions of the Tax Commission. Ms. Baker and the Reagans appealed directly to this court under Utah Code section 78–2–2(3) (2002). The MTC Shareholders and the MacFarlanes appealed to the Fourth Judicial District Court, which granted them summary judgment. The district court found that the language and purpose of Utah Code section 59–10–106 (2004) supported a broader interpretation of the statute, particularly of the phrase "on income." That court looked not at the label of the taxes imposed i.e., as a franchise or excise tax as opposed to an income tax but instead at the functional effect of the tax on the taxpayers. The Tax Commission appealed the judgment of the district court. The parties agreed to consolidate the appeals of Taxpayers and of the Tax Commission for a determination of the common legal issue.

¶ 8 We have jurisdiction over the appeal from the district court pursuant to Utah Code sections 59–1–608 and 78–2–2(3)(j), and over the appeals from the Tax Commission pursuant to Utah Code sections 59–1–602(1) and 78–2–2(3)(e)(ii).

### STANDARD OF REVIEW

¶ 9 A matter "of statutory interpretation [is] a question of law that we review on appeal for correctness." *State v. Schofield,* 2002 UT 132, ¶ 6, 63 P.3d 667. We also use a correction of error standard for the conclu-

sions of law of the Tax Commission, Utah Code Ann. § 59–1–610(1)(b), and review the conclusions of law of the district court for correctness on summary judgment. *Dick Simon Trucking, Inc. v. Utah State Tax Comm'n,* 2004 UT 11, ¶ 3, 84 P.3d 1197.

### ANALYSIS

¶ 10 The sole issue before this court is whether shareholders of an S corporation can claim a tax credit under Utah Code section 59–10–106 (2004) for taxes paid to other states by the S corporation when those taxes are measured by income. The Tax Commission argues that shareholders cannot claim such credits because the term "on income" as used in the statute does not include taxes labeled as franchise or excise taxes. Such an interpretation, the Tax Commission believes, is in accordance with the principle of statutory construction that tax credit statutes are to be strictly construed against the taxpayer.

¶ 11 While we recognize the general proposition that tax credit statutes are to be strictly construed against the taxpayer, we do not find it conclusive in this case. Instead, we find that the plain language of section 59–10–106 is clear in extending credits not only for taxes labeled as income taxes, but also for franchise or excise taxes measured by income. This plain language reading is wholly consistent with the statute's purpose of avoiding double taxation.

### I. THE PLAIN LANGUAGE OF SECTION 59–10–106 IS SUFFICIENTLY BROAD TO INCLUDE FRANCHISE TAXES MEASURED BY INCOME

¶ 12 In undertaking statutory construction, "[w]e look first to the plain lan-

---

2. The California tax is "a tax according to or measured by a corporation's net income...." Cal. Rev. & Tax.Code § 23151(a) (West 2004). The Texas tax is the greater of 0.25 percent of the corporation's net taxable capital and 4.5 percent of the corporation's net taxable earned surplus. Tex. Tax Code Ann. § 171.002(b) (Vernon 2002). All of the Taxpayers paid the Texas tax based on the net taxable earned surplus component of the tax.

3. The Texas statute states that the tax is a franchise tax imposed on "each corporation that does business in [Texas]." Tex. Tax Code Ann.

§ 171.001 (Vernon 2002 & Supp.2005). Likewise the California tax is "for the privilege of exercising [the] corporate franchises within [California]." Cal. Rev. & Tax Code § 23151.

4. The MTC Shareholders were also initially denied credits for taxes paid to Georgia, Louisiana, and the District of Columbia. However, these credits were subsequently allowed by the Tax Commission based upon the wording of the respective statutes and the overall legislative tax scheme of these governments.

guage of a statute to determine its meaning. Only when there is ambiguity do we look further." *J. Pochynok Co., Inc. v. Smedsrud,* 2005 UT 39, ¶ 15, 116 P.3d 353. Moreover, "[w]hen examining the plain language, we must assume that each term included in the [statute] was used advisedly." *Carrier v. Salt Lake County,* 2004 UT 98, ¶ 30, 104 P.3d 1208 (citation omitted).

¶ 13 Utah Code section 59–10–106 (2004) states:

A resident individual shall be allowed a credit against the tax otherwise due under this chapter equal to the amount of the tax imposed on him for the taxable year by another state of the United States, the District of Columbia, or a possession of the United States, on income derived from sources therein which is also subject to tax under this chapter.

The controversy in this case surrounds the definition of the term "on income." The Tax Commission argues that there is a distinction in tax law between excise franchise taxes and taxes "on income," even though both types of taxes may be measured by income. For example, Hellerstein divides taxes measured by income into two categories: "(1) excise taxes on ... the privilege of doing, or the license to do, business in the state; and (2) taxes on net income derived from or attributable to the state." Jerome R. Hellerstein & Walter Hellerstein, *State Taxation,* ¶ 7.01 (3d ed.2000). Because excise and franchise taxes are distinct from taxes on income, the Tax Commission asserts that credits are not available for the former under section 59–10–106.

¶ 14 We do not find this distinction relevant to the case before us. The Tax Commission has failed to show that this distinction is recognized in any area apart from state taxation of income from federal obligations. In that area of the law such a distinction is sometimes warranted and useful to avoid rendering state legislation void.[5] But there is no reason why such a distinction should be recognized here. In fact, the United States Supreme Court rejected just such a distinction in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Before *Complete Auto,* a state could not tax a foreign corporation for "the 'privilege' of doing business as measured by the apportioned net income," *id.* at 285, 97 S.Ct. 1076, because the Supreme Court had held it violated the Commerce Clause. *See Spector Motor Serv., Inc. v. O'Connor,* 340 U.S. 602, 603–04, 71 S.Ct. 508, 95 L.Ed. 573 (1951), *overruled by Complete Auto,* 430 U.S. 274, 97 S.Ct. 1076. At that time, however, states could impose a tax on the apportioned net income itself. In effect, the only difference between what was permissible and what was impermissible was the wording of the imposition statute. *Complete Auto* recognized that such a distinction "has no relationship to economic realities," and accordingly discarded it. 430 U.S. at 279, 97 S.Ct. 1076. The substance of both types of taxes was the same, just as the substance of a franchise tax measured by income is the same as any other tax measured by income.

¶ 15 Rather than being restrictive, as the Tax Commission's interpretation suggests, we think that the clear language of section 59–10–106 is broad and inclusive. Had the Legislature intended a restrictive meaning it could have used the term of art "income tax" in place of the term "on income." Unlike the term "on income," a restrictive reading of the

---

5. 31 U.S.C. § 3124(a) (2000), provides:

Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation[.]

In *First American National Bank of Knoxville v. Olsen,* 751 S.W.2d 417 (Tenn.1987), the Tennessee Supreme Court held that a Tennessee excise

tax fell under the exception to 31 U.S.C. Section 3124. The court found that the tax was not an income tax, which would violate 31 U.S.C. Section 3124, but that it was a non-property tax because "[t]he excise tax [was] not imposed directly or indirectly on the obligations themselves or on the income earned from them but rather on the privilege of utilizing the corporate form in Tennessee[.]" *Id.* at 420. The court concluded that "the distinction between a tax *on income* and a tax *measured by income* ... survives for any State taxes within the Federal statutory exceptions [of 31 U.S.C. section 3124]." *Id.* at 423 (emphasis in original).

term of art "income tax" is supported by several cases where the term "income tax" is distinguished from taxes on other subjects, although measured by income. *See J.M. & M.S. Browning Co. v. State Tax Comm'n,* 107 Utah 457, 154 P.2d 993, 994 (1945); *Chilivis v. Int'l Bus. Mach. Corp.,* 142 Ga.App. 160, 235 S.E.2d 626, 627 (1977); *Aztar Ind. Gaming Corp. v. Dep't. of State Revenue,* 806 N.E.2d 381, 385 (Ind.Tax 2004).

¶ 16 The term "income tax," however, does not appear in section 59–10–106. We therefore are persuaded by the Maryland Court of Appeals, which stated, regarding Maryland's tax credit statute:

> [This section] does not require, as a condition for the tax credit, that the other jurisdiction's tax be an income tax in any particular form or be labeled 'income tax' or be exclusively an 'income tax.' It simply requires that there be 'tax on income paid to another State....' Under the plain language of the [statute], the taxpayers here have paid a 'tax on income'....

*Roach v. Comptroller of the Treasury,* 327 Md. 438, 610 A.2d 754, 759 (1992) (quoting Md.Code Ann. Tax–Gen. § 10–703(a) (1988)). This reasoning is equally applicable here.

¶ 17 The Tax Commission's focus on the labels of the taxes as franchise, excise, or income taxes in determining whether or not these taxes are "on income" is misplaced. Unlike the statute at issue in *Pauley v. Virginia Department of Taxation,* 55 Va. Cir. 215 (Va. Cir. Ct.2001), one of only two cases [6] in which courts have disallowed tax credits claimed by shareholders in S corporations,

the language of section 59–10–106 does not contain any restrictive labels, but only defines the group of applicable taxes with the term "on income." [7] Because such a broad term is used, labels are not dispositive.[8] What is dispositive is the effect the tax has on the taxpayer. If the tax imposed by the state in which the corporation is doing business is measured by income, the taxpayer's individual income is, in effect, taxed. This same income is also taxed by Utah. However, the purpose of tax credit statutes is to avoid this type of double taxation. *See Gray v. Franchise Tax Bd.,* 235 Cal.App.3d 36, 286 Cal.Rptr. 453, 455 (1991) ("The purpose of a credit for taxes paid to another state on income derived in this state is the prevention of double taxation."); *In Re Baker,* 1990 N.Y. Tax LEXIS 715, at *13 (N.Y. Tax App.1990) ("[T]he legislative purpose behind the enactment of the ... tax credit [is] to avoid double taxation of the same income."); *Tarrant v. Dep't of Taxes,* 169 Vt. 189, 733 A.2d 733, 741 (1999) ("The purpose of affording taxpayers credit for income taxes paid in another state is to prevent or alleviate the burden of double taxation."). To adopt the strict, label-based definition of "on income" offered by the Tax Commission would frustrate the statutory purpose.[9]

## II. THE RULE OF STRICT CONSTRUCTION OF TAX CREDIT STATUTES AGAINST THE TAXPAYER IS NOT TO BE APPLIED IF IT VIOLATES CLEAR LEGISLATIVE INTENT

¶ 18 The Tax Commission cites "the well-established principle that tax exemption stat-

---

**6.** The other case is *Brennan v. Director of Revenue,* 937 S.W.2d 210 (Mo.1997). In *Brennan,* the Missouri Supreme Court declined to allow a tax credit for taxes paid to Texas because the Texas tax had both a capital and an income component. *Id.* at 211. The court ruled that it was impossible to divide the two components of the tax. *Id.* at 212. Even so, the analysis in *Brennan* indicates that the Missouri Supreme Court would have allowed the credit had the tax had a single, income-based component. *Id.* at 211. Thus, both cases cited by the Tax Commission are clearly distinguishable from the present case.

**7.** The Virginia statute in *Pauley* specifically excluded any "franchise tax, license tax, excise tax, unincorporated business tax, occupation tax or any tax characterized as such by the taxing jurisdiction, although applied to earned or business

income [from credit]." Va.Code Ann. § 58.1–332 (2004).

**8.** Some courts go even further, looking at the nature of the tax even when a specific label is used. *See Bishop v. District of Columbia,* 401 A.2d 955, 958 (D.C.1979) ("As to the characterization of a tax, it is fundamental that the nature and effect of a tax, not its label, determine if it is an income tax or not.").

**9.** In interpreting "on income" to include franchise and excise taxes measured by income, we follow the majority of jurisdictions that have addressed this precise issue. *See Tarrant,* 733 A.2d 733; *Perez v. Dep't of Revenue & Taxation,* 1998–0330 (La.App. 1 Cir. 3/8/99), 731 So.2d 406; *Baker,* 1990 N.Y. Tax LEXIS 715.

utes are to be strictly construed against the party claiming the exemption" in support of its narrow definition of the term "on income." *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n,* 814 P.2d 581, 591 (Utah 1991). The Tax Commission urges that this rule be extended to tax credit statutes as well. Both tax exemptions and tax credits cause a loss of revenue to the state. It is reasonable, therefore, for this court to treat them similarly. Numerous other jurisdictions have done the same. *See Canty v. Idaho State Tax Comm'n,* 138 Idaho 178, 59 P.3d 983, 987 (2002) ("If there is ambiguity in a tax statute specifically regarding deductions . . . the law is to be construed strongly against the taxpayer." (internal quotation marks omitted)); *Manufab, Inc. v. Miss. State Tax Comm'n,* 808 So.2d 947, 949 (Miss. 2002) ("[T]ax [credits] will be strictly construed against the taxpayer claiming the exemption and . . . any dispute will be resolved in favor of the taxing authority."); *Hermann v. Dir. of Revenue,* 47 S.W.3d 362, 365 (Mo. 2001) ("Tax credits and exemptions are construed strictly and narrowly against the taxpayer."); *Team Specialty Prods., Inc. v. N.M. Taxation & Revenue Dep't,* 2005-NMCA-020, ¶ 9, 137 N.M. 50, 107 P.3d 4 (N.M.Ct.App.2004) ("We are guided by the principle that tax credits are strictly matters of legislative grace and are to be construed against the taxpayer.") (internal quotation marks omitted); *Ariz. Dep't of Revenue v. Raby,* 204 Ariz. 509, 65 P.3d 458, 460 (App. 2003) ("[T]ax deductions, subtractions, exemptions, and credits are to be strictly construed [against the taxpayer].").

¶ 19 While we agree that the rule of strict construction applies to tax exemptions, this rule is only a secondary consideration that does not always come into play. "[T]he rule of strict construction should not be utilized to defeat the intent of the legislative body." *State Dep't of Assessments and Tax-*

ation *v. Belcher,* 315 Md. 111, 553 A.2d 691, 695 (1989). *See also Tarrant v. Dep't of Taxes,* 169 Vt. 189, 733 A.2d 733, 739 ("While we recognize the general rule that statutes granting credits must be strictly construed against the taxpayer, the construction must not defeat the purposes of the statute."). The best evidence of that intent is the plain language of the statute, *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984), and we decide this case on that basis. Even were we to go beyond the plain language of section 59–10–106, there is ample evidence that the Legislature's intent was to allow the credits at issue. If the intent of the legislature is manifestly different from the effect that a strict construction of the statute would produce, the manifest intent trumps.[10]

## CONCLUSION

¶ 20 We hold that the term "on income" in Utah Code section 59–10–106 includes taxes measured by or calculated according to income. It is clear from the use of this broad term that the Legislature intended to allow taxpayers relief not just from income taxes, but also from any taxes measured by income that would lead to double taxation of the same income stream. The Taxpayers in this case must be allowed a credit for their pro rata shares of the corporate franchise taxes of both Texas and California. We therefore affirm the ruling of the district court granting summary judgment to the Taxpayers and reverse the decision of the Tax Commission.

¶ 21 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.

---

10. Presumably, the reason for the rule of strict statutory construction is because it serves a guide in determining legislative intent. Because tax credits and exemptions are "matters of legislative grace," *Team Specialty Prods., Inc.,* 2005-NMCA-020, ¶ 9, 137 N.M. 50, 107 P.3d 4 (internal quotation marks omitted), courts may rightly infer that the Legislature would not want to extend that grace too far, but rather would seek to limit its application to a select group for a

specific reason. However, as the Vermont Supreme Court stated, "[w]hile we recognize the general rule that statutes granting credits must be strictly construed against the taxpayer, the construction must not defeat the purposes of the statute." *Tarrant,* 733 A.2d at 739. *See also Belcher,* 553 A.2d at 695 (Md.1989) ("[T]he rule of strict construction should not be utilized to defeat the intent of the legislative body.").