865 P.2d 1192

In the Matter of the RATES AND CHARGES OF US WEST COMMUNICATIONS, INC.

US WEST COMMUNICATIONS, INC., a Colorado corporation, Appellant,

v.

NEW MEXICO STATE CORPORATION COMMISSION, Appellee,

and

State of New Mexico, Intervenor.

No. 21081.

Supreme Court of New Mexico.

Dec. 1, 1993.

Barry L. Hjort, Chief Counsel, David Maestas, US West Communications, Inc., Albuquerque, for appellant.

Tom Udall, Atty. Gen., Carol Baca, Asst. Atty. Gen., Santa Fe, for appellee.

Tom Udall, Atty. Gen., Carol A. Clifford, Asst. Atty. Gen., Santa Fe, for intervenor.

## OPINION

RANSOM, Chief Justice.

This case was removed from the State Corporation Commission to this Court by US West Communications pursuant to Article XI, Section 7 of the New Mexico Constitution. Under Article XI, Section 8 of the Constitution, the Commission must rule on a petitioner's requested rate change within six months of the date of the filing of the application. If the Commission does not rule within six months, the petitioner may implement its requested rates pending a final order by the Commission. Following US West's filing of an application for rate change, the Commission entered an order deferring retroactively the commencement date of the constitutional six-month suspension period from the date of the actual filing to the date that the application was complete. US West contests this order. We affirm.

*Facts and proceedings.* On August 28, 1992, U S West, a telephone company and provider of public telecommunications services, filed an application with the Commission requesting approval of a permanent rate increase of $29.6 million annually. The company also filed a motion requesting an interim rate increase of $13.2 million to be effective January 1, 1993. The application included permanent and interim schedules containing numerous proposed rate changes affecting various types of services and the written direct testimony and exhibits of twelve witnesses. The application, however, did not contain specific rate base or intrastate investment information as required.

After the original application was filed, the Commission staff reviewed the application and discovered that the investment information was missing. Article XI, Section 7 of the New Mexico Constitution mandates that the Commission give "due consideration" to investment information before ruling on any application submitted by a telecommunications service provider. Because of this, the staff requested that US West supply the information, and on October 5, 1992, US West complied. On October 26, the staff moved to dismiss the original application because it was constitutionally deficient. Alternatively, the staff requested that the Commission rule that the six-month suspension period did not commence until October 5.

On November 24, the Commission denied the staff's motion to dismiss but granted its request that October 5 be deemed the commencement date of the six-month suspension period. As a basis for its ruling, the Commission decided that US West's application was constitutionally deficient until October 5. After this ruling, the Commission's review process continued and on April 8, 1993 it entered an order allowing US West to increase its rates by $7.909 million annually. A subsequent order by the Commission reduced this amount to $7.1 million.

*Issue and standard of review.* US West contends that, because the six-month suspension period is mandated constitutionally, the Commission had no authority to defer retroactively the period's commencement date. The Commission and the Attorney General contend that the Commission is clothed with broad constitutional authority, including the authority to set the beginning and ending dates of the six-month suspension period. Because the issue of the Commission's authority to defer the beginning of the six-month time period is solely a question of constitutional construction, we shall apply our independent judgment. *See Arco Alaska, Inc. v. Alaska*, 824 P.2d 708, 710 (Alaska 1992) (stating that constitutional questions are questions of law to which the court applies its independent judgment).

■ *The Commission has the inherent authority to dismiss a constitutionally defi-*

*cient application.* The Commission and the Attorney General contend that the authority to defer the beginning of the six-month period falls within the same basic inherent power as the authority to dismiss an application. US West does not dispute the fact that the Commission has the power to dismiss an application despite the fact that the Constitution does not expressly grant it that power. Nevertheless, it is important to discuss the basis for that authority because it relates to the Commission's inherent authority to take other actions.

In describing the authority of the Commission, this Court previously has stated that "[i]t is difficult to conceive of a more clear and all-inclusive grant of power to a governmental agency." *Mountain States Tel. & Tel. Co. v. New Mexico State Corp. Comm'n,* 90 N.M. 325, 331, 563 P.2d 588, 594 (1977) [hereinafter *Mountain States 1977*]. This Court described this grant of power as "plenary", *see id.* at 334, 563 P.2d at 597 (quoting *San Juan Coal & Coke Co. v. Santa Fe, San Juan & N. Ry.,* 35 N.M. 512, 517, 2 P.2d 305, 307 (1931)), and "so broad that little room is left for construction." *See id.* The Commission's grant of power is limited only in that it

> is bound by, and limited to, its existing rules and regulations, proper application of the law, compliance with the constitutional mandate, and by previously established methods of ratemaking, absent a change in circumstances peculiar to the company and the pending case, making it necessary that there be a departure from established methods.

*General Tel. Co. v. Corporation Comm'n (In re General Tel. Co.),* 98 N.M. 749, 755, 652 P.2d 1200, 1206 (1982).

The New Mexico Constitution grants the Commission the authority to "prescribe its own rules of order and procedure, except so far as specified in this constitution." N.M. Const. art. XI, § 4. The Commission has used this authority to develop procedural rules, including a rule regarding motions to dismiss. Rule 21 of the Commission's Rules of Procedure states:

A party to a proceeding before the Commission may at any time move the Commission to dismiss the proceedings, or any portion thereof, for lack of jurisdiction, failure to meet the burden of proof, or failure to comply with the rules of the Commission or for other good cause shown.

US West does not challenge the propriety of this rule and at oral argument affirmatively conceded that at the time it filed its application the Commission had continuing authority to dismiss its application. Supported by federal courts and sister state courts that recognize a regulatory commission's power to dismiss deficient applications, we conclude as a matter of law that the Commission had this authority. *See, e.g., Municipal Light Bds. v. Federal Power Comm'n,* 450 F.2d 1341, 1345 (D.C.Cir.1971) (holding that commission may reject any filing that "patently is either deficient in form or a substantive nullity"), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972); *Intermountain Gas Co. v. Idaho Pub. Util. Comm'n,* 98 Idaho 718, 722, 571 P.2d 1119, 1123 (1977) (stating that commission may "reject applications which fail to set forth all data relevant to the necessity and reasonableness of the relief requested"); *In re New England Tel. & Tel. Co.,* 131 Vt. 310, 305 A.2d 598, 601 (1973) (stating that Public Service Board could reject filings that are "made in bad faith, or so unreasonable and irresponsible, that the board might, on such grounds, be justified in refusing them").

■ *Because the Commission has the authority to dismiss filings it also has the inherent authority to suspend proceedings.* The Commission and the Attorney General argue that dismissal in this case would have been particularly harsh and unreasonable and that the Commission has the authority to proscribe a less severe remedy. US West argues that the constitutionally mandated six-month suspension period is tantamount to an express limitation upon the Commission's power to defer proceedings.

The Commission's authority to dismiss deficient filings is founded in the New Mexico

Constitution and in its own rules. "It is an elementary rule of law that the power to grant a particular relief carries with it all the incidental, necessary, and reasonable authority to grant that which is less." *Pacific Tel. & Tel. Co.*, 78 Pub.Util.Rep. n.s. (PUR) 491, 493 (Cal.Pub.Util.Comm'n 1949) (quoted in *Mountain States 1977*, 90 N.M. at 335, 563 P.2d at 598). In this instance, the suspension of proceedings pending the completion of a deficient application is a remedy that is less harsh than complete dismissal. *See Intermountain Gas Co.*, 98 Idaho at 723, 571 P.2d at 1124 (stating that "a 'dismissal' is a more drastic act [than a suspension]"). A dismissal puts the utility "back on square one in the rate application process" while a suspension tolls the running of the six-month period until the application is correct. *Id.* at 724, 571 P.2d at 1125. Because the Commission has the authority to dismiss, it also has "the incidental, necessary, and reasonable authority" to suspend proceedings pending completion of an application, even though this authority is not expressly stated in the Constitution.

The Commission's authority to suspend falls within the limitations placed upon its grant of power described in *General Telephone Co.* because it is required by constitutional mandate to give "due consideration" to certain elements (including investment) before ruling on a telecommunications carrier's application for rate change. *See* N.M. Const. art. XI, § 7. In order for the Commission to comply with this mandate and yet rule on the petitioner's application with "reasonable promptness" as required by Article XI, Section 8, it must have the authority to suspend proceedings pending the filing of all necessary information.[1]

*The authority to suspend is limited by the same restrictions placed on the authority to dismiss.* One possible result of our holding is that the Commission could abuse its authority to suspend proceedings and frustrate the six-month time period. The six-month

rule was created for the benefit of the utility to the end that the Constitution requires that the Commission act quickly and the rule is "[t]he only constitutional relief available to regulated carriers." *See Mountain States Tel. & Tel. Co. v. Corporation Comm'n (In re Rates & Charges of Mountain States Tel. & Tel. Co.)*, 99 N.M. 1, 10, 653 P.2d 501, 510 (1982). However, the Commission is also charged with protecting the public interest, *see Mountain States 1977*, 90 N.M. at 331, 563 P.2d at 594 ("The Commission has a duty to be a prime mover in the procedure to see that the public interest is protected...."), and "each public telecommunications service is declared to be affected with the public interest." NMSA 1978, § 63–9A–5 (Repl. Pamp.1989). Thus, in reviewing any action by the Commission, this Court must balance the interests of the public with those of the regulated carrier.

Both of these interests are best protected by recognizing the Commission's authority to suspend proceedings and by proscribing limitations on this authority. Cases that support the authority to dismiss filings limit that authority to situations where the filing is patently defective in substance or form. *See, e.g., Municipal Light Bds.*, 450 F.2d at 1345; *Intermountain Gas Co.*, 98 Idaho at 724, 571 P.2d at 1125. Similarly, the authority to suspend proceedings should be limited to those situations in which the application clearly is incomplete or incorrect. If the application is deficient it can be returned and the six-month period will be suspended until the application is completed or corrected. As the Idaho Supreme Court stated:

A "return" of the application works no ... violence to the statutory time framework since it merely tolls the running of the statutory period until such time as the application is corrected. The economic incentive for the utility to correct the application and once again have it "on file," is such that any time lost due to a "return" will be kept to an absolute minimum.

1. Unlike the authority to dismiss, the authority to suspend proceedings is not based upon a rule of procedure established by the Commission. We strongly suggest that the Commission promulgate

rules that set out what is required in an application for rate change along with the standards defined in this opinion for suspending proceedings.

*Intermountain Gas Co.,* at 724, 571 P.2d at 1125. Even though the New Mexico suspension period is mandated by constitution rather than statute, the logic of the Idaho Supreme Court satisfies our concern that the Commission might abuse its authority.

 *The Commission has the authority to determine retroactively that the time period should have been suspended.* This case poses a particular problem in that the Commission did not simply suspend the running of the six-month rule but instead determined retroactively to defer the beginning of the six-month period. Therefore, we must address the question of whether the Commission has the authority to determine retroactively that a period of time should have been suspended.

It is clear that a regulatory commission may not promulgate rules during an adjudicatory process and then retroactively apply the rules to a party whose rights are being adjudicated. *See Intermountain Gas Co.,* at 724, 571 P.2d at 1125. In this case, however, the Commission had the inherent authority to suspend proceedings when US West filed its application; this is not a situation in which it is applying promulgated rules during an adjudication. Instead, the Commission in essence ruled that there had been an undeclared suspension of the proceedings until US West filed a complete application. We believe that because the Commission had the inherent authority to suspend the proceedings at the time that US West filed its application, it had the inherent authority, absent intervening equities, to determine at a later date that the proceedings were suspended.

The Commission should have the flexibility to apply its rules and exercise its authority. *See United States v. Storer Broadcasting Co.,* 351 U.S. 192, 205, 76 S.Ct. 763, 771, 100 L.Ed. 1081 (1956) (stating that the Federal Communications Commission should have the flexibility to refuse applications without a hearing when a hearing is not warranted). This need for flexibility is based upon the Commission's responsibility to protect the public interest. In *Storer,* the Court stated that "[w]e do not think Congress intended the Commission to waste time on applications that do not state a valid basis for a hearing." *Id.* Applying the same logic, this Court does not believe that the drafters of Article XI, Section 8 intended for the Commission to lose part of its six-month review period while encouraging a party to cure an incomplete application. Therefore, the Commission could determine retroactively that the beginning of the six-month rule was deferred until a complete application was filed.

*Application of the law to the facts of this case.* In this case the staff recognized that US West's application did not contain certain investment information and immediately requested this information. Counsel for US West conceded for the purpose of this case that the original application was deficient. Upon discovering this deficiency, the staff acted expeditiously to cure the inadequate application. The six-month time period was suspended only until the application contained the requisite information. When the application was complete, the staff and the Commission proceeded to review the application and entered a ruling on its merits within six months. We cannot say that the Commission abused its constitutional authority by acting in this manner.

*Conclusion.* The Commission has the inherent authority to defer retroactively the beginning of the six-month time period pending the filing of a complete application. Therefore, the decision of the Commission is affirmed.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.