**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2021-NMCA-025

Filing Date: March 8, 2021

No. A-1-CA-37231

**PAR FIVE SERVICES, LLC,**

Protestant-Appellee/Cross-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

Respondent-Appellant/Cross-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Dee Dee Hoxie, Hearing Officer**

and

**No. A-1-CA-37303**

**MOSAIC POTASH CARLSBAD INC.,**

Protestant-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Released for Publication July 20, 2021.

Sanchez, Mowrer & Desiderio, P.C.
Robert J. Desiderio
Isaac S. Emmanuel
Albuquerque, NM

Betzer, Roybal & Eisenberg, P.C.
Benjamin C. Roybal
Albuquerque, NM

for Appellee Par Five Energy Services, LLC and Appellant Mosaic Potash Carlsbad, Inc.

Hector H. Balderas, Attorney General
Timothy J. Williams, Staff Attorney, Legal Services Bureau
Tonya Noonan Herring, Special Assistant Attorney General
Marek Grabowski, Special Assistant Attorney General
Santa Fe, NM

for New Mexico Taxation & Revenue Department

**OPINION**

**B. ZAMORA, Judge.**

**{1}** This opinion addresses two separate appeals.[1] Mosaic Potash Carlsbad, Inc. and Par Five Energy Services, LLC (collectively, Taxpayers), appeal from the administrative hearing officers' decisions upholding partial denials by the New Mexico Department of Taxation and Revenue (Department) of applications for the New Mexico High-Wage Jobs Tax Credit (HWJTC), NMSA 1978, § 7-9G-1 (2013, amended 2019).[2] The Department also appeals the hearing officer's allowance of the HWJTC for one of Par Five's employees. The central issue in both appeals is the definition and effect of the statutory term "new job" for purposes of the HWJTC. We hold that a "new job" is brought into being for purposes of the HWJTC when a new job position that did not previously exist is created. We affirm the findings of the hearing officer who presided over the *Mosaic* case, and affirm in part and reverse in part, the findings of the hearing officer who presided over the *Par Five* case.

**BACKGROUND**

**I. The HWJTC and Departmental Methodologies**

**{2}** The HWJTC provides an eligible employer with a tax credit for each "new high-wage economic-based job" for three consecutive qualifying periods the employer

---

1Because the appeals raise substantially similar issues, we exercise our discretion to consolidate them for decision. *See* Rule 12-317(B) NMRA (allowing an appellate court to consolidate appeals for decision); *accord Belen Consol. Sch. Dist. v. Cnty. of Valencia*, 2019-NMCA-044, ¶ 1, 447 P.3d 1154, *cert. granted*, 2019-NMCERT-___ (Nos. S-1-SC-37692, S-1-SC-37778, Aug. 9, 2019), *aff'd sub nom. Nash v. Bd. of Cnty. Comm'rs of Catron Cnty.*, 2021-NMSC-005, 480 P.3d 842 (consolidating appeals raising "substantially similar issues").

2Although the HWJTC has been amended since 2013, the parties in both consolidated cases agree that the 2013 version of the statute governs these proceedings because it was the version in force at the time Taxpayers filed their applications for credit. All citations to the HWJTC in this opinion reference the 2013 version of the statute unless otherwise indicated.

creates and fills with an eligible employee. Section 7-9G-I(D). Relevant to this appeal, the Department employs two different methodologies known as the "replacement analysis" and the "career path promotion analysis" to determine whether Taxpayers have created a "new job" for purposes of the HWJTC. When a new employee is hired, the Department utilizes the replacement analysis to determine whether a "new job" has been created. In contrast, when an existing employee is promoted to a different position, the Department utilizes the career path promotion analysis to determine whether a "new job" has been created.

## II.     The Tax Protests

{3}     In December 2015, Par Five filed an application for credit under the HWJTC for qualifying periods occurring between January 2011 and July 2015. As relevant to this appeal, the Department, employing the replacement analysis, denied the HWJTC with respect to six employees over seven qualifying periods, on the basis that such employees "were hired to fill preexisting jobs, not new jobs." The hearing officer upheld the Department's denial.[3] In addition, Par Five promoted an existing employee to a higher paying position and claimed that the promotion created a "new job." Employing the career path promotion analysis, the Department denied the HWJTC after determining that Par Five had not created a new position, but instead had simply promoted the employee into a higher paying position. The hearing officer reversed the Department's denial, finding that there was no dispute that the promotion was actually a new job and concluding that the criteria the Department used under the career path promotion analysis to determine whether the position was new were not supported by the HWJTC statute. Par Five appeals the hearing officer's decision and order upholding the Department's denials of credit pursuant to the replacement analysis, and the Department appeals the hearing officer's decision and order reversing the Department's denial, pursuant to the career path promotion analysis.

{4}     Similarly, in December 2015 Mosaic filed an application for credit for the period of January 2010 through February 2015. As relevant to this appeal, the Department, applying the replacement analysis, denied the HWJTC for sixty employees over ninety-two qualifying periods on the basis that the hiring of these employees did not create "new jobs" because the hired employees merely filled vacancies left by employees who had previously held the same job positions. The hearing officer upheld the denial based on a finding that Mosaic had "failed to substantiate that the jobs claimed were newly created[.]"[4] The hearing officer also rejected Mosaic's claim that the Department mechanically denied credit for certain qualifying periods based on the Department's prior denial of a previous HWJTC application submitted by Mosaic. Mosaic appeals the hearing officer's decision and order upholding the Department's denials of credit pursuant to the replacement analysis. In addition, Mosaic appeals the hearing officer's finding that the Department fully reviewed and analyzed Mosaic's application materials

---

3The hearing officer found that Par Five met all other eligibility requirements for the credits in question.
4The hearing officer found that Mosaic met all other eligibility requirements for the credits in question.

and did not mechanically deny credit for any qualifying periods claimed in the present application based on the Department's denial of Mosaic's prior application.

## DISCUSSION

**{5}**     The parties raise the following issues on appeal: (1) Taxpayers allege that the hearing officers erred in upholding the Department's interpretation of the statutory term "new job" as requiring the creation of a new position; (2) Taxpayers contend that the hearing officer erred in upholding the Department's denials of credit under the replacement analysis; (3) the Department alleges that the hearing officer in the *Par Five* case erred by finding that Par Five was entitled to the HWJTC for promoting one of its existing employees; and (4) Mosaic argues that substantial evidence does not support the hearing officer's denial of the HWJTC.

## I.     Standard of Review

**{6}**     On appeal, a decision and order issued by a hearing officer for an administrative agency will only be set aside if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *Team Specialty Prods., Inc. v. N.M. Tax'n & Revenue Dep't*, 2005-NMCA-020, ¶ 8, 137 N.M. 50, 107 P.3d 4 (internal quotation marks and citation omitted). We review a hearing officer's "interpretation of the statutory and regulatory language de novo." *Giant Cab, Inc. v. CT Towing, Inc.*, 2019-NMCA-072, ¶ 6, 453 P.3d 466.

## II.     For Purposes of the HWJTC a "New Job" Means the Creation of a Job Position That Did Not Previously Exist

**{7}**     We begin by clarifying the definition of the statutory term "new job" for purposes of the HWJTC because the parties' competing interpretations of this term underpin their contrasting positions with respect to the propriety of the replacement and career path promotion analyses utilized by the Department. Taxpayers contend that a "new job" is created for the purposes of the HWJTC when an employer hires a new *employee*. In contrast, the Department argues that creating a "new job" means creating a job *position* that did not previously exist. We agree with the Department.

**{8}**     Interpretation of a statute is a question of law which an appellate court reviews de novo. *See Morgan Keegan Mortg. Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. In construing a statute, our primary goal is "to give effect to the intent of the [L]egislature." *Dell Catalog Sales L.P. v. N.M. Tax'n & Revenue Dep't*, 2009-NMCA-001, ¶ 19, 145 N.M. 419, 199 P.3d 863 (internal quotation marks and citation omitted). In discerning legislative intent, "we look first to the plain language of the statute, giving the words their ordinary meaning[.]" *Flores v. Herrera*, 2016-NMSC-033, ¶ 8, 384 P.3d 1070 (internal quotation marks and citation omitted). If the plain language of the statute is clear, we refrain from further interpretation. *Starko, Inc. v. N.M. Human Servs. Dep't*, 2014-NMSC-033, ¶ 46, 333 P.3d 947 (Vigil, C.J., dissenting).

"A fundamental rule of statutory construction is that all provisions of a statute, together with other statutes in pari materia, must be read together to ascertain the legislative intent." *Roth v. Thompson*, 1992-NMSC-011, ¶ 15, 113 N.M. 331, 825 P.2d 1241.

{9}     The term "new high-wage economic-based job" is defined under the HWJTC as "a *new job* created in New Mexico by an eligible employer . . . that is occupied for at least forty-eight weeks of a qualifying period by an eligible employee[.]" Section 7-9G-1(M)(5) (emphasis added). The term "new job" is not further defined by the 2013 version of the HWJTC or by regulation. The hearing officers in both cases looked to dictionary definitions to elucidate the meaning of the term. They found that the word "new" means "recently come into being," and that the word "create" means "to bring into existence[.]" *New*, *Black's Law Dictionary* (11th ed. 2019); *Create, Merriam-Webster Online Dictionary*, http://www.merriam-webster.com/dictionary/create (last visited Feb. 24, 2021). Based on these definitions, the hearing officers concluded that "a new job is one that recently came into being and did not exist at an earlier time." On appeal, Taxpayers note that the hearing officers did not define the crucial term "job" within the phrase "new job." Taxpayers offer the definition "the regular work that a person does to earn money," in support of their contention that "new job" means "new employee." *Job, Cambridge Online Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/job (last visited Feb. 24, 2021). Ostensibly, Taxpayers offer this definition because it specifically references a "person"—implying that the "person" doing "the regular work" is an integral component of what constitutes a "job." However, "job" is also defined as "a regular remunerative *position*," "a specific *duty*, *role*, or *function*[.]" *Job, Merriam-Webster Online Dictionary*, http://www.merriamwebster.com/dictionary/job (last visited Feb. 24, 2021) (emphasis added). These latter definitions support the Department's argument that the word "job" is synonymous with the word "position."

{10}     Reading Section 7-9G-1(M)(5) together with the other provisions in the HWJTC statute, we find further support for the Department's interpretation that "new job" means "new position." *See Roth*, 1992-NMSC-011, ¶ 15 (instructing that statutes are to be read together with other statutes in pari materia). Section 7-9G-1(D) states the HWJTC "may be claimed by an eligible employer for each new high-wage economic-based job performed *for the year in which the new high-wage economic-based job is created* and for the three consecutive qualifying periods." (Emphasis added.) In our view, the explicit limitation allowing credit beginning "the year in which the new high-wage economic-based job is created," *id.*, lends support to the Department's interpretation of "new job" as equivalent to "new position"; it is the creation of the job position, and not the hiring of an employee, which allows the taxpayer to claim the credit. Similarly, the HWJTC statute draws distinctions between the creation of job positions and the hiring of employees to fill them. *See, e.g.*, § 7-9G-1(E) (providing that a new job "shall not be eligible for . . . credit . . . unless the eligible employer's total number of *employees* with . . . jobs . . . is at least one more than the number on the day prior to the date the new high-wage economic-based job was created" (emphasis added)). Reading the statute in its entirety and construing the language in accordance with its plain meaning, we agree with the Department and conclude that a "new job" for purposes of Section 7-9G-

1(M)(5) is brought into being by the creation of a new position that did not previously exist.

### III. The Department Has the Authority to Implement the Replacement and Career Path Promotion Analyses

**{11}** In light of our holding that creation of a "new job" requires the creation of a new position that did not previously exist, we now consider whether (1) the Department has the authority to implement methodologies like the career path promotion and replacement analyses; and (2) whether the Department was required to reduce the analyses to writing.

**{12}** Taxpayers argue that the Department lacks the authority to employ the replacement and career path promotion analyses because the analyses create arbitrary requirements and distinctions that are not found within or supported by the language of the statute. We disagree. Our Supreme Court has held that an administrative agency has the authority to reasonably interpret the statute which it is charged with enforcing. *See State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 39, 117 N.M. 346, 871 P.2d 1352 (affirming an administrative agency's interpretation of an ambiguous statute because it was "empowered to interpret" the statute). In this case, the Department is specifically charged with the "administration and enforcement of . . . [the HWJTC]." *See* NMSA 1978, § 7-1-2(A)(16) (2019). In addition, Section 7-9G-l(J) of the HWJTC provides that "an eligible employer shall apply to the taxation and revenue department on forms and in the manner prescribed by the department." While we agree with Taxpayers that none of the Department's rules, regulations, or statutory authority explicitly set forth the requirements of the replacement and career path promotion analyses, we are nevertheless persuaded by the Department's assertion that it has the authority to devise means and methods to evaluate whether a taxpayer is entitled to a credit because such powers arise from the statutory language by fair and necessary implication. *See Howell v. Heim*, 1994-NMSC-103, ¶ 8, 118 N.M. 500, 882 P.2d 541 ("The agency's authority is not limited to the express powers granted by statute, but also includes those powers that arise from the statutory language by fair and necessary implication.").

**{13}** Taxpayers point out that the Department has not promulgated any written public guidance, rules, or regulations, that set forth the parameters of the replacement and career path promotion analyses, and argue that the Department lacks the authority to interpret statutory terms without providing notice or written guidance to the public. We are not persuaded. The Department's enabling powers specifically allow it to interpret a tax statute without adopting a rule or regulation related to that statute. *See* NMSA 1978, § 9-11-6.2 (2015) (allowing the department to interpret statutory law through rulings and orders as well as through instructions and regulations). In addition, precedent provides that administrative agencies may apply unwritten rules and methodologies so long as they are reasonably consistent with their statutory mandates. *See, e.g.*, *In re Rates & Charges of US W. Commc'ns, Inc.*, 1993-NMSC-074, ¶ 16, 116 N.M. 548, 865 P.2d 1192 (holding that the state corporation commission had inherent power under its grant

of authority to suspend proceedings and retroactively defer ruling on a telephone company's rate change application even in the absence of a rule allowing the commission to take this action and reasoning that the "[c]ommission should have the flexibility to apply its rules and exercise its authority"); *Phelps Dodge Tyrone, Inc. v. N.M. Water Quality Control Comm'n*, 2006-NMCA-115, ¶¶ 21-24, 140 N.M. 464, 143 P.3d 502 (holding that the New Mexico Environment Department has the authority to impose reasonable conditions on discharge closeout permits to meet water quality standards where regulations and statutory authority do not dictate a specific method to be used); *Saiz v. Barham*, 1983-NMCA-132, ¶ 11, 100 N.M. 596, 673 P.2d 1329 (holding that the medical review commission's regular practice of mailing by certified mail, final results of medical-legal panels, was neither impermissible, nor a rule within the meaning of the state rules act such that it was required to be reduced to writing). We decline to overturn the replacement and career path promotion analyses solely because they have not been reduced to writing.[5] *Cf. N.M. Dep't of Labor v. Echostar Commc'ns Corp.*, 2006-NMCA-047, ¶ 14, 139 N.M. 493, 134 P.3d 780 ("If, when we agreed with an agency's application of a controlling law, we nevertheless rejected that application simply because the agency failed to comply with required administrative procedures, then we would undermine the legal force of the controlling law." (alteration, internal quotation marks, and citation omitted)).

## IV.     The Replacement and Career Path Promotion Analyses Are Not Unreasonable

**{14}**     Having held that the Department had the authority to develop the replacement and career path promotion analyses and was not required to reduce them to writing, the only remaining inquiry is whether such analyses are reasonable. *See N.M. Att'y Gen. v. N.M. Pub. Regul. Comm'n*, 2013-NMSC-042, ¶ 12, 309 P.3d 89 (holding that an agency is not entitled to deference if its "interpretation of a law is unreasonable or unlawful" (internal quotation marks and citation omitted)). We examine each analysis in turn.

## A.     The Hearing Officers Did Not Err in Upholding the Department's Denials of Credit Under the Replacement Analysis

**{15}**     The Department applies the replacement analysis when a taxpayer hires a new employee, in order to ascertain whether the hiring of that employee created a "new job," or whether a taxpayer merely filled a vacant preexisting position. If a newly hired employee is placed in the same job position as an employee that previously left the company, the Department classifies that hire as a mere "replacement" of the prior employee, rather than a newly created position or "new job." Because an eligible employer is allowed to claim the HWJTC for each new high-wage job in the year the

---

[5]Taxpayers also argue that the lack of written regulations and rules and lack of public guidance violates the Taxpayer Bill of Rights. NMSA 1978, Section 7-1-4.2(A) (2017) (providing that the rights afforded New Mexico taxpayers include "the right to available public information"). While we decline to declare the replacement analysis void pursuant to this argument, we note that agencies should strive to provide clear and comprehensive guidance to the public. Accordingly, we adopt the course of action taken by our Supreme Court and "strongly suggest that the [Department] promulgate rules that set out what is required" of Taxpayers who wish to claim the HWJTC. *US W. Commc'ns, Inc.*, 1993-NMSC-074, ¶ 11n.1.

new job is created and the three consecutive qualifying periods, *see* Section 7-9G-I(D), if a position is vacated and filled by another employee, the Department will allow the employer to continue to claim any remaining qualifying periods. However, the Department will not allow the employer to claim a new set of four qualifying periods when a new employee is hired to fill a previously vacated position.

**{16}**    With respect to Par Five, the Department denied credit for six employees over seven qualifying periods, on the basis that such employees "were hired to fill preexisting jobs, not new jobs." With respect to Mosaic, the Department disallowed sixty employees over ninety-two qualifying periods on the basis that the hiring of these employees did not create "new jobs" because the hired employees merely filled vacancies left by employees who had previously held the same job positions. The hearing officers in both cases upheld the denials.

**{17}**    Taxpayers contend that the hearing officers erred in upholding the Department's denials of credit under the replacement analysis because the analysis is unreasonable. We start with the notion that an administrative agency has "considerable discretion" in applying its statutory powers to effect the intent of the Legislature as set forth by statute. *See OS Farms, Inc. v. N.M. Am. Water Co.*, 2009-NMCA-113, ¶ 33, 147 N.M. 221, 218 P.3d 1269 (reviewing the New Mexico Public Regulation Commission's interpretation of utility rates); *see also Howell*, 1994-NMSC-103, ¶ 8 ("The agency's authority is not limited to the express powers granted by statute, but also includes those powers that arise from the statutory language by fair and necessary implication."). However, we recognize that "although courts may afford a degree of deference to an agency's interpretation of a statute the agency is charged with administering, such deference does not give the [Department] the authority to pour any meaning it desires into the statute." *OS Farms, Inc.*, 2009-NMCA-113, ¶ 33 (internal quotation marks and citations omitted). For this reason, an agency is not entitled to deference if its "interpretation of a law is unreasonable or unlawful." *N.M. Att'y Gen.*, 2013-NMSC-042, ¶ 12 (internal quotation marks and citation omitted). Finally, we note that "tax credits are strictly matters of legislative grace and are to be construed against the taxpayer." *Team Specialty Prods., Inc.*, 2005-NMCA-020, ¶ 9 (alteration, internal quotation marks, and citation omitted). In the context of deductions and exemptions, which are also matters of legislative grace, *see Tucson Elec. Power Co. v. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 14, 456 P.3d 1085, we have held that such exemptions or deductions "must be clearly and unambiguously expressed in the statute, and must be clearly established by the taxpayer claiming the right thereto." *Pub. Serv. Co. of N.M. v. N.M. Tax'n & Revenue Dep't*, 2007-NMCA-050, ¶ 32, 141 N.M. 520, 157 P.3d 85 (internal quotation marks and citation omitted).

**{18}**    While Taxpayers contend that one consequence of the replacement analysis is to prevent employers who have previously downsized from taking advantage of the HWJTC when rehiring employees to fill vacated positions, we are not persuaded that this consequence is averse to the legislative purpose of the HWJTC. As the Department persuasively argues, the replacement analysis prevents employers "from churning the HWJTC by hiring employees for new positions, receiving the HWJTC for all or a portion

of the four qualifying periods and then laying off employees or downsizing, and later rehiring new workers in those same positions to claim the credit again for another four qualifying periods." In other words, the replacement analysis is congruent with the legislative purpose of the HWJTC in that it guards against potential abuse while simultaneously serving as an aid to determine whether a job position is truly "new." *See* § 7-9G-I(D) (explaining that the HWJTC may only be "claimed by an eligible employer for each *new* high-wage economic-based job performed for the year in which the *new* high-wage economic-based job is created and for the three following qualifying periods" (emphasis added)). Taxpayers have not shown that the Department's use of the replacement analysis is unreasonable or unlawful. *See N.M. Att'y Gen.*, 2013-NMSC-042, ¶ 12 (holding that an agency is not entitled to deference if its "interpretation of a law is unreasonable or unlawful" (internal quotation marks and citation omitted)); *Team Specialty Prods., Inc.*, 2005-NMCA-020, ¶ 9 ("[T]ax credits are strictly matters of legislative grace and are to be construed against the taxpayer." (internal quotation marks and citation omitted)). Accordingly, we hold that the replacement analysis is not unreasonable, and because the Department is entitled to deference, we affirm the hearing officers' decisions and orders in both cases denying the HWJTC, pursuant to the replacement analysis.

**B.** **The Hearing Officer Erred in Reversing the Department's Denial of Credit, Pursuant to the Career Path Promotion Analysis**

**{19}** The Department employs the career path promotion analysis when a taxpayer promotes an existing employee, to determine whether the taxpayer created a new position or "new job." The Department does not classify a job as "new" if the employee is internally promoted into a higher paying position. Relevant to this appeal, in determining whether a new position was created, the Department considers, (1) whether the claimed promotion position was advertised to other New Mexico residents using a competitive hiring and interview process; and (2) whether a different eligible employee was hired to fill the position vacated by the promoted employee. If these requirements are met, then the employer can claim the remaining qualifying periods (if any) for the vacated position and may claim qualifying periods for the promotion position.

**{20}** In 2011, Par Five created a new high-wage job and hired an eligible employee, Travis Kelsey, as a pump operator. The Department allowed Par Five to claim the HWJTC for the first qualifying period while Kelsey was employed as a pump operator. Then Par Five promoted Kelsey to a higher-paying "service operator" position and claimed that Kelsey now occupied a new high wage job and that his salary was again subject to the HWJTC for four additional qualifying periods, pursuant to Section 7-9G-I(D). During the protest hearing, Department auditor Steven Valenzuela testified that he denied credit under the career path promotion analysis with respect to Kelsey because Par Five did not establish that the claimed position was a new position. First, the service operator position was not advertised as a new position or made available to other New Mexicans through a competitive hiring process. Further, Valenzuela testified that the taxpayer failed to submit documentation to the Department confirming that an employee

was hired to replace Kelsey's vacated position. The hearing officer reversed the Department's denial of credit, finding that "[t]here was no dispute that the promotion was actually a new job[,]" that the Department "denied the credit as to the promotion solely because the position was not publicly advertised" and that "[t]here is no requirement that a job previously filled by one employee must be filled by a new employee before the first employee's movement to a new job will qualify."[6]

{21}    On appeal, the Department alleges that the hearing officer in the *Par Five* case erred by reversing the Department's denial of the HWJTC under the career path promotion analysis. We note again that an administrative agency has the authority to reasonably interpret the statute which it is charged with enforcing, *Helman*, 1994-NMSC-023, ¶ 39, and when an agency that is governed by a particular statute construes or applies that statute, "we will accord some deference to the agency's interpretation." *N.M. Att'y Gen. v. N.M. Pub. Regul. Comm'n*, 2015-NMSC-032, ¶ 24, 359 P.3d 133 (alterations, internal quotation marks, and citation omitted). In addition, tax credits are matters of legislative grace, and accordingly Taxpayers bear the burden of proving that the Department's use of the career path promotion is unreasonable. *See Team Specialty Prods., Inc.*, 2005-NMCA-020, ¶ 9.

{22}    Because the Department's use of the career path promotion analysis is not unreasonable or unlawful, we defer to it and reverse the hearing officer's decision in this regard. *See N.M. Att'y Gen.*, 2013-NMSC-042, ¶ 11 (holding that an agency is not entitled to deference if its "interpretation of a law is unreasonable or unlawful" (internal quotation marks and citation omitted)). According to the Department, the career path promotion analysis aims to ascertain whether a claimed "new job" is actually a new position, and to prevent employers from abusing the statutory scheme to generate tax credit awards not contemplated by the Legislature. As the Department explains, "[a]llowing employers to re-start the four-year limitation on qualifying periods circumvents the limitations intended by the [L]egislature. Taken to its logical conclusion, an employer could hire one new employee each qualifying period, (to satisfy the headcount requirement of Section 7-9G-I(E) . . ., but then 'promote' all existing high-wage employees after claiming four qualifying periods and have a continuous flow of 'new' high-wage jobs, but in fact have offered few 'new' jobs to New Mexico residents." We agree that requiring Taxpayers to fill a position vacated by the promoted employee is consistent with the purpose of the HWJTC and with the Department's statutory duty to determine whether a job is truly new. *See* § 7-9G-I(B) (providing that the purpose of the HWJTC is to "provide an incentive for . . . businesses to create and fill new high-wage jobs in New Mexico"). Moreover, the 2019 amendment to the HWJTC clarifying that "new job" "means a job that is occupied by an employee *who has not been employed in*

---

[6]We note that the hearing officer found that the Department "denied the credit as to the promotion solely because the position was not publicly advertised and made available to competing candidates." However, the record reflects that the Department also determined that Kelsey's vacated position was not filled. Par Five contends that the position was in fact filled and cites to the contact log as evidence. The referenced communication however is an email from Par Five's representative attempting to convince the Department that Kelsey's former position "was filled almost immediately" and is not in and of itself documentation that Par Five filled the position. In addition, Taxpayer did not provide documentation showing that the claimed promotion position was made available to other New Mexico residents.

*New Mexico by the eligible employer in the three years prior to the date of hire*[,]" NMSA 1978, § 7-9G-1(Q)(9) (2019) (emphasis added), now explicitly prohibits taxpayers from seeking credit for existing employees who are placed in alternate job positions. While we acknowledge that the 2019 version of the HWJTC is not controlling in this case because the statute was amended after taxpayers filed their applications for the HWJTC, we may nevertheless infer legislative intent from such an amendment. *See N.M. Real Estate Comm'n v. Barger*, 2012-NMCA-081, ¶ 18, 284 P.3d 1112 (explaining that courts may look to later amendments of statutes to aid in interpreting their meaning). For the foregoing reasons, we reverse the *Par Five* hearing officer's decision overturning the Department's denial under the career path promotion analysis.

**V.      The Hearing Officer's Finding That the Department Fully Reviewed and Analyzed Mosaic's Application Materials Is Supported by Substantial Evidence**

**{23}**      Finally, we turn to Mosaic's contention that the hearing officer's finding that the Department fully reviewed and analyzed Mosaic's application materials is not supported by substantial evidence. Mosaic contends that the narrative written by the auditor who evaluated Mosaic's application explicitly states that the auditor disallowed certain credits because "they were disallowed on the prior claim." (Emphasis omitted.)

**{24}**      "To conclude that substantial evidence exists to support an administrative decision we need only find that there is credible evidence for a reasonable mind to accept as adequate the result reached by the agency." *Las Cruces Pro. Fire Fighters & Int'l Ass'n of Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). "[W]e will not substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Rodriguez v. Permian Drilling Corp.*, 2011-NMSC-032, ¶ 7, 150 N.M. 164, 258 P.3d 443 (alteration, omission, internal quotation marks, and citation omitted).

**{25}**      The hearing officer found that "no period was mechanically denied purely because it was denied in the [p]revious [a]pplication[, but i]nstead, periods were denied because [Mosaic] once again failed to establish entitlement to the credit." Our review of the record confirms that finding. In 2013, the Department denied Mosaic's previous application in part because Mosaic failed to provide a complete employee listing, which precluded the Department from evaluating whether the jobs for which credit was claimed were newly created under the replacement analysis. Mosaic and the Department eventually reached a settlement—leaving undecided, the issue of whether Mosaic had established that such jobs were new within the meaning of the HWJTC. Mosaic then submitted its current application in December 2015, and the application was partially denied. At the 2017 hearing, auditor Joan Wittig testified that with respect to the current application, the Department fully reviewed the materials provided by

Mosaic and denied credit either because Mosaic did not provide any additional information from what had been provided in the previous application, or alternatively, because the Department did not receive sufficiently accurate new information that allowed it to determine that a given job was not new. The hearing officer found that "Wittig credibly testified that the Department performed a full review of the new [a]pplication, evaluating every claimed period against every criteria in the statute, and that no period was mechanically denied purely because it was denied in the [p]revious [a]pplication." "It is for the trier of fact to weigh the evidence, determine the credibility of witnesses, reconcile inconsistent statements of the witnesses, and determine where the truth lies." *Jaynes v. Wal-Mart Store No. 824*, 1988-NMCA-076, ¶ 8, 107 N.M. 648, 763 P.2d 82. For this reason, "[w]e will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Clark v. Clark*, 2014-NMCA-030, ¶ 26, 320 P.3d 991 (internal quotation marks and citation omitted). Accordingly, we hold that the hearing officer's finding that "periods were denied because [Mosaic] once again failed to establish entitlement to" the HWJTC was supported by substantial evidence and therefore, affirm the hearing officer's decision.

**CONCLUSION**

**{26}**    We reverse the hearing officer's decision and order in the *Par Five* case with respect to the Department's denial of credit under the career path promotion analysis, but otherwise affirm. We affirm the hearing officer's decision and order in the *Mosaic* case.

**{27}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**