The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>April 29, 2024</u>

**No. A-1-CA-40686**

**TALBRIDGE CORPORATION,**

      Protestant-Appellee/Cross-Appellant,

v.

**NEW MEXICO TAXATION & REVENUE DEPARTMENT,**

      Respondent-Appellant/Cross-Appellee,

**IN THE MATTER OF THE PROTEST OF THE ASSESSMENT ISSUED UNDER LETTER ID NO. L0479267504.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Chris Romero, Hearing Officer**

Modrall Sperling Roehl Harris & Sisk, P.A.
Zachary L. McCormick
Albuquerque, NM

for Appellee

Raúl Torrez, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellant

**OPINION**

**BOGARDUS, Judge.**

{1}     This appeal and cross-appeal arise in response to a decision and order of the Administrative Hearing Officer affirming in part and denying in part the New Mexico Taxation and Revenue Department's (the Department) assessment of unpaid gross receipts tax (GRT), pursuant to the New Mexico Gross Receipts and Compensating Tax Act, NMSA 1978, §§ 7-9-1 to -117 (1966, as amended through 2023), against Talbridge Corporation (Taxpayer) in the amount of $484,974.10.[1] The hearing officer determined that Taxpayer failed to establish it was a disclosed agent under Section 7-9-3.5(A)(3)(f) and thus not exempt from paying GRT on the reimbursement it received from Chevron, but nevertheless found that Taxpayer was exempt from paying GRT on the markup fee it received for the payroll services it performed solely out of state.

{2}     On appeal, the Department argues that the hearing officer erred in determining that Taxpayer was entitled to an exemption from GRT on the markup fee it received because the markup fee was for out of state services ancillary to Taxpayer's employment of Area 52 members in New Mexico. Taxpayer cross-appeals arguing that the hearing officer erred in using the incorrect definition of "agent" in finding

---

[1]The total amount the Department assessed Taxpayer owed was comprised of $347,318 in unpaid GRT, $69,347 in penalty, and $68,308.10 in interest for the periods of January 31, 2013, to April 30, 2019.

that it had failed to establish that it was entitled to an exemption as a disclosed agent under Section 7-9-3.5(A)(3)(f). For the following reasons, we reverse in part and affirm in part.

**BACKGROUND**

{3}     Taxpayer is an employment agency based in Houston, Texas, whose sole owner also resides in Texas. Taxpayer has no physical office in New Mexico. Taxpayer formed a relationship with Chevron, formalized by a professional service agreement, under which it would identify, recruit, screen, and hire individuals as contract workers for Chevron. Eventually, Taxpayer's work for Chevron informally expanded to providing payroll services for certain members of a group called Area 52.[2] All Area 52 members worked in New Mexico, for Chevron. The payroll services performed by Taxpayer for the group were beyond the scope of the professional service agreement Taxpayer had with Chevron.

{4}     The services Taxpayer provided to certain Area 52 members were limited to placing the members on Taxpayer's payroll, paying their salaries, withholding taxes, and providing benefits for them. Taxpayer was not the sole payroll service provider available to Area 52 members and Area 52 members individually selected Taxpayer as their payroll service provider. Taxpayer did not recruit, select, hire, or set the rate

---

[2]We use the term group to describe the collection of independent contractors who associated themselves under the name Area 52 because it is unclear from the record whether Area 52 was formally incorporated or organized as a legal entity.

of compensation for those members who chose it to provide payroll services for them. Instead, Taxpayer would pay and provide its other payroll services to Area 52 members based on data it received from Chevron and Chevron, in turn, would reimburse Taxpayer for Area 52 members' compensation and pay Taxpayer a markup fee. Chevron recruited and hired all Area 52 members according to its own terms and conditions, had control of and set their rates of compensation and approved time for all Area 52 members. Chevron had control of all work performed by Area 52 members.

{5}     Eventually, Chevron decided to consolidate its payroll services with a single provider and notified Taxpayer that it must send a mandatory form letter informing the Area 52 members on its payroll that payroll services would be moved to another provider. Taxpayer lacked any authority to act on behalf of Chevron to address any Area 52 member's concerns about the payroll transition and Chevron alone determined if any member could remain on Taxpayer's payroll.

{6}     In 2019, the Department selected Taxpayer for an audit and assessed Taxpayer for approximately $350,000 of unpaid GRT plus interest amounting to $68,300 and a penalty of $69,350 for the period from January 31, 2013, to April 30, 2019. Taxpayer filed a formal protest and an administrative hearing was held on July 22, 2021. Taxpayer had reported its taxable income for the audit period but had deducted 100 percent of that income. Taxpayer asserted that the receipts for which the

Department assessed GRT against it were funds paid to Taxpayer for one of two purposes: they were either reimbursement for the compensation of Area 52 members employed in Santa Fe, or a markup fee for the payroll services Taxpayer performed solely in Houston. Taxpayer argued that the receipts received as reimbursement were received solely on behalf of another in a disclosed agency capacity under Section 7-9-3.5(A)(3)(f), and thus exempt from GRT. Taxpayer further argued that the markup fee it received for its payroll services was compensation for services performed solely out of state and thus exempt from GRT. The hearing officer determined that Taxpayer had failed to establish that it was acting as a disclosed agent of Chevron, and thus was responsible for GRT assessed against it for the reimbursement it received from Chevron. Nevertheless, the hearing officer determined that Taxpayer was entitled to abatement of the portion of the tax principal corresponding with the sum of receipts received from solely out of state services—the markup fee. This appeal and cross-appeal followed.

**DISCUSSION**

{7}    On appeal, the Department argues that the hearing officer erred by determining that the markup fee was exempt from GRT because although it was received for services performed out of state, those services were ancillary to the services Taxpayer performed in New Mexico and thus subject to GRT under 3.2.1.18(D)(1) NMAC (12/14/2012). Taxpayer cross-appeals arguing that the

4

hearing officer erred by applying the definition of agency described in 3.2.1.19(C) NMAC (9/30/2010) in determining that Taxpayer failed to establish it was a disclosed agent under Section 7-9-3.5(A)(3)(f). We begin by setting forth our standard of review and relevant presumptions. We then address each argument in turn.

## I.       Standard of Review and Relevant Presumptions

{8}      This Court will only set aside the hearing officer's decision if it is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015). A hearing officer's decision is arbitrary and capricious when "it is unreasonable or without a rational basis, when viewed in light of the whole record." *Process Equip. & Serv. Co. v. N.M. Tax'n Revenue Dep't*, 2023-NMCA-060, ¶ 23, 534 P.3d 1043 (internal quotation marks and citation omitted). Moreover, a decision is not supported by substantial evidence, if, when viewing the evidence in the light most favorable to the agency's decision, the evidence does not support the result reached. *See Vigil v. N.M. Tax'n & Revenue Dep't*, 2022-NMCA-032, ¶ 9, 514 P.3d 15. Finally, a decision is not in accordance with the law "if the hearing officer unreasonably or unlawfully misinterprets or misapplies the law." *Process Equip. & Serv. Co., Inc.*, 2023-NMCA-060, ¶ 23 (text only) (citation omitted). We review questions of law and the application of the law to the facts de

novo. *Robison Med. Rsch. Grp., LLC v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-065, ¶ 4, 535 P.3d 709.

{9}     "[I]t is presumed that all receipts of a person engaging in business are subject to [GRT]." Section 7-9-5(A). Moreover, "[a]ny assessment of taxes or demand for payment made by the department is presumed to be correct." NMSA 1978, § 7-1-17(C) (2023). "[T]he taxpayer has the burden of overcoming this presumption." *ITT Educ. Servs., Inc. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 5, 125 N.M. 244, 959 P.2d 969. "Where an exemption or deduction from tax is claimed, the statute must be construed strictly in favor of the taxing authority, the right to the exemption or deduction must be clearly and unambiguously expressed in the statute, and the right must be clearly established by the taxpayer." *Wing Pawn Shop v. N.M. Tax'n & Revenue Dep't*, 1991-NMCA-024, ¶ 16, 111 N.M. 735, 809 P.2d 649 (internal quotation marks and citation omitted). "If the taxpayer rebuts the presumption of correctness, the burden shifts to the department to demonstrate the correctness of the tax assessment." *Vigil*, 2022-NMCA-032, ¶ 8 (alteration, internal quotation marks, and citation omitted).

**II.     The Hearing Officer Erred in Determining That Taxpayer Was Exempt From Paying GRT on the Markup Fee**

{10}     The hearing officer found that Taxpayer was exempt from paying GRT on the markup fee they received because under the unique facts of this case, the fee was compensation solely for payroll services performed exclusively out of state. On

6

appeal, the Department argues that the hearing officer erred because, although the payroll services were performed out of state, those services were incidental to the service Taxpayer performed in state—employing Area 52 members in New Mexico—and therefore taxable. In response, Taxpayer argues that the hearing officer was correct in determining that the payroll services Taxpayer performed were exempt from GRT because the payroll services were the true service for which Chevron engaged Taxpayer and those services were performed solely out of state. We agree with the Department that the payroll services Taxpayer performed out of state were incidental to Taxpayer's employment of Area 52 members in New Mexico and therefore conclude the hearing officer erred by finding those receipts exempt from GRT.

{11} Section 7-9-3.5(A)(1) defines gross receipts as "total amount of money or the value of other consideration received from . . . selling services performed outside New Mexico, the product of which is initially used in New Mexico, or from performing services in New Mexico." This definition explicitly excludes services performed solely out of state from GRT as clarified by the Department's own regulations. New Mexico Administrative Code 3.2.1.18(D)(1) (12/14/2012), provides that "[g]eneral administrative and overhead expenses incurred outside New Mexico and allocated to operations in this state . . . [including] expenses incurred outside New Mexico which are incidental to performing services in New Mexico,

7

all constitute the taxpayer's expenses of performing services in New Mexico." At the same time, 3.2.1.18(E)(1) NMAC (12/14/2012) states that "[r]eceipts from performing services . . . outside New Mexico are not subject to the [GRT]." Thus, activities incidental to a service performed in New Mexico are subject to GRT, whereas activities performed out of state are not. *See ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 13 (stating that "incidental activities are part of the service provided within New Mexico and therefore subject to New Mexico's [GRT]"). Therefore, we must determine whether the payroll services performed by Taxpayer were the primary service provided or whether these services were incidental to Taxpayer's primary service. *See id.* (focusing on the primary service contracted for and where the taxpayer performs it to determine if the activity is incidental to a service performed in New Mexico and therefore taxable).

{12}    The Department cites *Bogle Management Co. v. New Mexico Taxation & Revenue Department*, A-1-CA-35641, mem. op. (N.M. Ct. App. Dec. 5, 2017) (nonprecedential), in support of its argument that Taxpayer's payroll services were incidental to Taxpayer's primary service of employing Area 52 members in New Mexico. In *Bogle Management Co.* the taxpayer was an Arizona corporation that conducted all of its business in Georgia and provided agricultural managers to farms in New Mexico. A-1-CA-35641, mem. op. ¶ 3. The taxpayer employed and supplied managers to the farms and provided payroll services for the farms. *Id.* ¶ 4. The

8

taxpayer was reimbursed for the payroll services it provided and given a management fee. *Id.* ¶ 5. Nevertheless, the "[t]axpayer did not recruit, interview, hire, promote, or fire any of the managers" and the farms had complete control over such tasks as well as control over the managers salary and salary increases and directly supervised the managers' daily work. *Id.* ¶ 6. The taxpayer disputed the GRT tax it was assessed arguing in relevant part that its management fee was exempt from GRT because the payroll services for which it was paid the management fee were performed exclusively out of state. *Id.* ¶ 22. This Court affirmed the hearing officer's decision that the management fee was subject to GRT because although the payroll services were performed out of state they were incidental to the services the taxpayer performed in New Mexico because the consumption of those services was by the taxpayer's employees working in New Mexico. *Id.* ¶ 23.

{13}     Although this case is not binding on our decision here, *see* Rule 12-405(A) NMRA, due to the similarity of the underlying facts we find it informative.[3] *Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, ¶ 10, 135 N.M. 128, 85 P.3d 252 (stating that unpublished opinions may be presented and considered as persuasive authority). In this case, just as the taxpayer in *Bogle Management Co.*, Taxpayer had no physical

---

[3] We consider and rely in part on the analysis in *Bogle Management Co.* because the facts and issues presented and precedent cited by *Bogle* are nearly identical to the facts and issues in the case before us and the precedent relied on is still good law. As a result, we find the analysis in *Bogle Management Co.* helpful to our analysis here.

presence in New Mexico other than its employees. Moreover, like the taxpayer in *Bogle Management. Co.*, Taxpayer, although technically the employer of the Area 52 members that selected it, did not identify, recruit, screen, hire, or control the pay of those members. Instead, Taxpayer received its markup fee from payroll services performed solely outside of New Mexico, but for the benefit of its employees in New Mexico. Because Taxpayer employed Area 52 members performing services in New Mexico and the consumption of the payroll services it performed out of state was by those employees, we agree with the Department that the payroll services performed out of state were incidental to Taxpayer's service of employing Area 52 members in New Mexico, and thus subject to GRT. *See Bogle Mgmt. Co.*, A-1-CA-35641, mem. op. ¶ 23 (stating that "the fact that [the t]axpayer performed the[] accounting, administrative, and payroll services from Georgia has no bearing on the result that the management fees are subject to gross receipts tax because the consumption of the services took place in New Mexico"); *ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 13 (stating that the taxpayer's activities out of state were "only incidental to its true service . . . [and were therefore] part of the service provided within New Mexico and . . . subject to New Mexico's [GRT]"). Therefore, the hearing officer erred by concluding that the markup fee was exempt from GRT.

10

**III. The Hearing Officer Did Not Err in Determining That Taxpayer Failed to Establish It Was a Disclosed Agent of Chevron**

{14} The hearing officer also found that Taxpayer failed to establish it was a disclosed agent under Section 7-9-3.5(A)(3)(f), because Taxpayer had no authority to act on Chevron's behalf and thus was not an agent of Chevron, and because Taxpayer failed to disclose any purported agency relationship to Area 52 members. Taxpayer argues on appeal that the hearing officer erred by applying the definition of agency described in 3.2.1.19(C)(1) NMAC (9/30/2010), because the regulation's requirement that an agent must have "the power to bind a principal in a contract with a third party" to establish an agency relationship is contrary to law. *See* 3.2.1.19(C) NMAC (9/30/2010). Taxpayer further argues that under the proper definition of "agent," uncontroverted facts not only establish it was an agent of Chevron but also that the agency relationship was disclosed. In response, the Department argues that the hearing officer correctly determined that Taxpayer failed to establish it was a disclosed agent of Chevron because Taxpayer failed to show Chevron was liable to Area 52 members for payroll if Taxpayer failed to pay them and Taxpayer failed to show it disclosed Chevron's obligation to Area 52 members. We need not determine if Taxpayer was an agent of Chevron because we agree with the Department that

11

even if Taxpayer was Chevron's agent, it failed to affirmatively disclose the agency relationship to Area 52 members.[4]

{15} To determine if Taxpayer was a disclosed agent under Section 7-9-3.5(A)(3)(f), we must engage in statutory interpretation. We review questions of statutory interpretation de novo. *See TPL, Inc. v. N.M. Tax'n & Revenue Dep't*, 2003-NMSC-007, ¶ 10, 133 N.M. 447, 64 P.3d 474 ("[W]hen we are required to interpret the phrases within a statute, we are presented with a question of law, which we review de novo."). "Our main goal in statutory [interpretation] is to give effect to the intent of the [L]egislature." *Dell Catalog Sales LP v. N.M. Tax'n & Revenue Dep't*, 2009-NMCA-001, ¶ 19, 145 N.M. 419, 199 P.3d 863 (internal quotation marks and citation omitted). "The plain language of a statute is the primary indicator of [this] intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). Moreover, "[c]ourts are to give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *Id.* (internal quotation

---

[4]This Court has only applied the "disclosed agency capacity" requirements under 3.2.1.19(C) NMAC (9/30/2010), when it was undisputed by the parties that the regulation applied. *See MPC Ltd. v. N.M. Tax'n & Revenue Dep't*, 2003-NMCA-021, ¶¶ 14, 37, 133 N.M. 217, 62 P.3d 308; *see also Del Corazon Hospice, LLC v. N.M. Tax'n & Revenue Dep't*, A-1-CA-37347, mem. op. ¶ 12 (N.M. Ct. App. Aug. 10, 2020) (nonprecedential). Therefore, our analysis is limited to the requirements for the exemption under the plain language of the statute. *Del Corazon Hospice, LLC*, A-1-CA-37347, mem. op. ¶ 12.

marks and citation omitted). "[W]hen a statute does not define a term, our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries." *Jaramillo v. N.M. Tax'n & Revenue Dep't & Risk Mgmt.*, 2024-NMCA-028, ¶ 15, 544 P.3d 295 (internal quotation marks and citation omitted).

{16}  Because the statute does not define "disclose," we rely on the ordinary meaning of the word as defined by the dictionary. *Merriam-Webster Dictionary*, defines the verb "disclose" to mean "to make known or public." *Merriam Webster Dictionary*, https://www.merriam-webster.com/dictionary/disclose (last visited April 3, 2024). Similarly, *Black's Law Dictionary* defines "disclose" to mean "[t]o make (something) known or public; to show (something) after a period of . . . being unknown; to reveal." *Disclose, Black's Law Dictionary* (11th ed. 2019).

{17}  In this case, the hearing officer found that there was no evidence that Taxpayer communicated the "nature of any purported agency relationship and accompanying obligations to" Area 52 members. On appeal, Taxpayer has failed to direct us to any such evidence and we have been unable to identify any such evidence in our independent review of the record. Taxpayer, seemingly acknowledging a lack of affirmative action, instead argues that the purported agency relationship was disclosed because Area 52 members were told to select a payroll service provider like Taxpayer by Chevron when they were hired and they knew that Chevron was

13

ultimately responsible for paying them. The hearing officer, however, found that testimony of Area 52 members that they believed Chevron to be ultimately responsible for their compensation was unpersuasive due to a lack of foundation for those beliefs. It is for the trier of fact to determine the credibility of witnesses and as such, we do not reweigh the hearing officer's determination of the credibility of witnesses on appeal. *See Par Five Servs., LLC v. N.M. Tax'n & Revenue Dep't*, 2021-NMCA-025, ¶ 25, 489 P.3d 983. Moreover, belief of a purported agency relationship is not equivalent to an act disclosing such relationship. Therefore, because the plain meaning of "disclosure" as used in Section 7-9-3.5(A)(3)(f) requires an act informing third parties of the agency relationship and no such evidence of such an act is present here, we conclude that the hearing officer did not err in determining that Taxpayer failed to establish they were a disclosed agent entitled to an exemption of GRT.

**CONCLUSION**

{18}     For the reasons stated above, we reverse in part, holding that Taxpayer is responsible for the assessed GRT on the markup fee received for the payroll services it performed for Chevron. We affirm the AHO's determination that Taxpayer was not a disclosed agent under Section 7-9-3.5(A)(3)(f) and was responsible for the assessed GRT on that sum as well.

14

{19}    **IT IS SO ORDERED.**


_____
**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**


_____
**JACQUELINE R. MEDINA, Judge**


_____
**GERALD E. BACA, Judge**

15